MONROE and another, Appellants, vs. RAILROAD COMMISSION OF WISCONSIN, Respondent.

*October 10—November 4, 1919.*

*Carriers: Railroad commission: Source of powers purely statutory: Supervision of jitneys.*

1. Under secs. 1797—62 to 1797—68, Stats., declaring operators of motor vehicles engaged in passenger transportation to be common carriers, and requiring them to obtain a certificate from the railroad commission, but not expressly authorizing the commission to exercise any supervision after issuing the certificate, the commission has no supervisory power as to routes or service, especially as the legislature rejected provisions giving such power and no penalty is imposed for violating new or amended orders of the commission.

2. The railroad commission being a tribunal of purely statutory creation, its powers and jurisdiction must be found in the statutes creating it.

APPEAL from an order of the circuit court for Dane county: E. RAY STEVENS, Circuit Judge. *Reversed.*

The appeal is from an order sustaining a demurrer to the complaint.

Prior to the commencement of this action the plaintiffs had been operating motor vehicles for the carriage of passengers for hire in the city of Racine, Wisconsin, under the provisions of ch. 546, Laws 1915, being secs. 1797—62 *et seq.*, Stats. Having given the required bond and made due application for and obtained the certificate provided for in said law from the defendant, plaintiffs respectively paid the license fee required under the ordinance of said city and ob-

tained from its mayor and common council licenses to so operate.

Four routes appear to have been designated by said *Railroad Commission* for the operation of such motor vehicles in the city of Racine on the printed form of applications of the respective plaintiffs, and one of such routes numbered 1, and the territory four blocks east, west, north, and south, was selected by plaintiffs, respectively, as being the general route or territory over which it was proposed to operate such motor vehicles.

The Milwaukee Light, Heat & Traction Company, operating a street railway system in the said city of Racine, made application to the defendant *Commission* requesting that an investigation be made and an order issued authorizing an increase in the fares for street railway service in the said city on the ground that the prevailing rates of fare were inadequate to care for the increased operating costs; and further, that a large number of automobiles carrying passengers for hire, commonly known as jitneys, operated in the city of Racine, and that the service afforded by the same was not adequate or systematized and that the said jitneys are substantially unregulated and untaxed, and that the revenues of said street railway system have been substantially lessened in consequence of such operation.

During the pendency of the hearing of such application the *Commission* on its own motion determined to make further investigation relating to the routes and service prescribed for bonded carriers or jitneys in the said city, with a view of possible change and restricting of the routes in the city of Racine over which said bonded carriers or jitneys may operate, and thereupon gave notice that a hearing would be had before the *Commission* to further investigate said matters and all questions relating to the operation of bonded carriers or jitneys in the city of Racine both as to routes and service, and fixed a time and place for such hearing.

Objection was made on behalf of the plaintiffs and others

similarly situated to the jurisdiction of the *Railroad Commission* to take such proceedings or make any order in the premises with relation to the operation of such motor vehicles.

December 28, 1918, an order was made by said *Railroad Commission* as follows:

"In the matter of the application of the Milwaukee Light, Heat & Traction Company for a revision of the rates of fare on its street railway system in the city of Racine."

"In the matter of the investigation, on motion of the *Commission,* of routes and service of bonded carriers or jitneys within the city of Racine."

"An order was entered in the above entitled matter on September 9, 1918, with respect to street railway rates in Racine, jurisdiction being retained with respect to the routes and service of bonded carriers or jitneys.    The *Commission* has kept in touch with the local situation since that time and has made some further study of the routes and service of the bonded carriers.

"At the present time there are no operators on routes No. 2, 3, and 4, and service on these routes has at no time been satisfactorily developed.    It appears advisable, therefore, to discontinue these routes, and they are hereby canceled.

"There are at present ten operators on route No. 1.    In view of the popularity of this route, no change appears to be advisable.    However, until there is further development of other possible routes which would be serviceable to the community, we deem it to be in the interest of the public to restrict the number of operators on route No. 1 to ten.

"A new route is hereby approved and designated as route No. 2.    The route is as follows: [description omitted.]

"Until the above described route is developed and occupied by at least ten operators, no further applications for route 1 will be granted, except to fill vacancies caused by the withdrawal of present operators on that route.    New routes will be designated from time to time should conditions warrant, and, if necessity therefor arises, further restrictions will be established.    Jurisdiction in this proceeding is retained for this purpose."

Thereupon the plaintiffs commenced this action on their

own behalf and on behalf of others similarly situated to have said order set aside, vacated, and declared null and void. The defendant demurred to such complaint, and upon the demurrer being sustained the plaintiffs appealed.

For the appellants the cause was submitted on the brief of *J. Elmer Lehr* of Milwaukee.

For the respondent there was a brief by the *Attorney General* and *J. F. Baker,* assistant attorney general, and oral argument by *Mr. Baker.*

ESCHWEILER, J.   The question involved in this appeal is whether there is a general supervisory power of control by the *Railroad Commission* after it has once acted, in issuing the required certificate, over the motor vehicles operating in passenger transportation, commonly known as jitneys.

The text or substance of ch. 546, Laws 1915, creating secs. 1797—62 to 1797—68 of the Statutes, so far as deemed necessary for this case, is as follows:

Sec. 1797—62, Stats., provides that the operator of any such motor vehicle "is hereby declared to be a common carrier, and is hereby required to furnish reasonable and adequate service at just and reasonable rates, and is hereby required to operate over such general routes or within such territory, and during such hours as may be reasonably required for the accommodation of the public in accordance with the following provisions."

Sec. 1797—63 provides that no such vehicle shall be operated until there shall have been filed with and accepted by the *Railroad Commission of Wisconsin* a good and sufficient bond in amounts specified for all damages that may be recovered against the operator of such vehicle by reason of the negligent use and operation of such vehicle. And in case such bond so filed should become inoperative, such vehicle shall not be operated until a bond meeting the requirements shall have been filed.

"Sec. 1797—64. Such bond shall be accompanied by an

application for the acceptance thereof by the railroad commission, which application shall state the name and residence of the applicant, the general route, or the territory, over which it is proposed to operate the motor vehicle described in such bond, the proposed hours of such operation and the rate of fare to be charged for carriage therein.

"If the railroad commission shall determine that such bond complies with the provisions of section 1797—63 and that the rates specified in the application accompanying the same are reasonable for such character of service, and that the proposed general route, or territory to be covered, and the hours of such operation are reasonably adapted to the accommodation of the public, it shall, regardless of any other service now furnished, accept such bond and shall thereupon issue to such applicant a certificate setting forth the fact that the applicant has in respect to the vehicle described therein complied with the provisions of section 1797—63 and section 1797—64.

"Section 1797—65. Every order and determination of the railroad commission under the provisions of section 1797—64 shall be subject to review in the manner provided by section 1797m—65 to section 1797m—71."

"Section 1797—67. Any person, firm or corporation operating any motor vehicle described in section 1797—62 who shall fail to comply with the provisions of section 1797—63 and section 1797—64 and section 1797—66, shall transport in any such vehicle a larger number of passengers than the number specified in such bond as the carrying capacity of such vehicle, shall charge a rate of fare other than that specified in the application accompanying such bond, or shall fail to operate such vehicle upon the general route, or within the territory, and during the hours set forth in such application, shall be deemed guilty of a misdemeanor and upon conviction shall be fined not less than ten dollars nor more than one hundred dollars for each offense and in default thereof may be committed to the county jail for not less than ten nor more than ninety days.

"Section 1797—68. Every city, village or town within or through which any motor vehicle described in section 1797—62 shall be operated may require that local consent for the operation thereof be procured and as a condition of

Monroe v. Railroad Comm. 170 Wis. 180.

such consent may require reasonable compensation for the repair and maintenance of pavements and bridges, and compensation for the regulation of street traffic, and for any other expense occasioned by the operation of such motor vehicle."

The following situation presents itself:

(1) There is no express language either in the chapter here involved or the law establishing the *Railroad Commission* which provides for any such subsequent supervision and control.

(2) The obligation imposed by sec. 1797—62, Stats., declaring such motor vehicles to be common carriers and requiring the operators thereof to furnish reasonable and adequate service at just and reasonable rates and to operate within such territory and during such hours as may be reasonably required for the accommodation of the public, would indicate that it refers to a continuing service and operation which necessarily, from the nature of such service and the constantly changing conditions, requires modification from time to time.

(3) That unless such power as was exercised by the *Commission* in the instant case is within its jurisdiction there is no other board, commission, or tribunal, except the courts, by which supervisory control could be exercised or the questions as to whether the rates and service are reasonably adequate for the accommodation of the public be determined.

(4) That by sec. 1797—68, Stats., above quoted, the several municipalities in which such service is proposed may give or withhold local consent for their operation, and as a condition to such consent may require a reasonable compensation.

That the hours of operation, the territory to be traversed, and the rates of fare to be charged are all conditions that necessarily are subject to change from time to time and need constant supervision and change, and that the power to determine like questions involved has already been vested by

the legislature in the *Railroad Commission* as to similar questions arising in the much broader fields of general railroad transportation, urban and interurban street railway service, and of the public utilities of the state, are very persuasive in favor of the conclusion reached by the court below that such power is in the *Railroad Commission*.

But the consideration of other matters involved compels us to reach the opposite conclusion.

The advent of such operation of automobiles in the field of common carriers of passengers on the streets of the various municipalities in this state produced a number of bills presented in both houses of the legislature of 1915. They were finally all referred to a joint committee with members from both houses, and public hearings had, and, after rejection of a number of the proposed bills and suggested amendments thereto, the chapter as now found in the sections above quoted was finally reported to the two houses as substitute amendment No. 2 S. to Bill No. 464 S., and adopted.

Among the provisions so presented, considered, and subsequently rejected were the following: (a) In event of the proposed change of routing by the jitneys, a supplemental certificate to such effect was to be issued by the *Railroad Commission;* (b) that in case any such jitney should, without ten days' prior notice thereof to the *Railroad Commission,* at any time abandon its regular schedule, any deficiency thereby caused should not be considered in proceedings involving the sufficiency of street railway service in the same municipality; (c) for the subsequent cancellation by the *Railroad Commission* of such certificate, after notice and application therefor, and then a return of the insurance policy; (d) that before any ordinance should be granted by a city or village for permission to use the streets of such municipality for such service, such certificate should be first submitted to and approved by the *Railroad Commission* as an amendment to sec. 940*b*, Stats.; (e) a proposed amendment to sec. 1797—2, Stats., to provide that all motor ve-

hicles for the carriage of persons for hire for the purpose of affording a means of local street or highway transportation should be within the term "railroad." (Manifestly to bring the vehicles in question here under the general control and regulation of the *Railroad Commission.*)

It is therefore evident that the legislature considered and rejected provisions which would have quite plainly and expressly given to the *Railroad Commission* such power as was attempted to be exercised by it in the present instance.

By sec. 1797—67, Stats., above quoted, express provision has been made declaring certain violations of the act to be misdemeanors and providing for their punishment, but no provision is to be found declaring that a violation of rules, regulations, or provisions made or declared by the *Railroad Commission* subsequent to the issuing of the original certificate shall be so punished.

On the other hand, any railroad by sec. 1797—27, Stats., or public utility by sec. 1797—95, Stats., is subject to a penalty for violating or neglecting or refusing to obey any lawful requirement or order made by the *Commission* or any judgment made by any court upon its application for any such violation, neglect, or refusal.

We should have, therefore, if defendant's construction of the statute were adopted, the somewhat anomalous situation of an operator of such vehicle being subject under sec. 1797—67 to a conviction as for a misdemeanor and a consequent fine for violation of the conditions of the original certificate issued by the *Commission,* and yet not subject to any penalty whatsoever, so far as can be found in this act, for violating any subsequent change of any old or of any new order that might be made by the *Commission.*

The *Railroad Commission* being a tribunal of purely statutory creation, its power and jurisdiction must be found within the four corners of the statutes creating it, and we can find within our statutes no such power or jurisdiction as was attempted to be exercised in the present case, and it fol-

lows therefrom that the demurrer to plaintiffs' complaint should have been overruled.

*By the Court.*—Order reversed, and cause remanded with directions to the circuit court to overrule defendant's demurrer and for further proceedings according to law.

VINJE, J., dissents.