STANDARD OIL COMPANY and another, Respondents, vs. PUBLIC SERVICE COMMISSION, Appellant.

*February 8—March 5, 1935.*

564

For the appellant there were briefs by the *Attorney General, H. F. Ferguson,* special assistant attorney general, and *Alvin C. Reis* of Madison, chief counsel for the Public Service Commission.

For the respondents there was a brief by *C. Henry Austin* of Chicago, and *H. H. Thomas* of Madison, and oral argument by *Mr. Thomas.*

ROSENBERRY, C. J. Ch. 194, Stats. 1933, known as the Motor Vehicle Transportation Act, classifies carriers for hire and defines them as follows:

"194.01 . . . (11) 'Contract motor carrier' means any person engaged in the transportation by motor vehicle of property for hire and not included in the term 'common motor carrier of property.' . . .

"(14) 'Private motor carrier' means any person engaged in the transportation of property by motor vehicle other than an automobile or two-wheeled trailer while used therewith, upon the public highways, and not included in the term 'common motor carrier of property' or 'contract motor carrier of property.' . . ."

The question presented by the allegations of fact in the complaint is, In which classification does the plaintiff Ireland and the plaintiff company fall? Ireland is in the employ of the company under what is known as a bulk station agent's employment contract. After defining the territory in which the agent is to operate, the contract provides: (1) That the agent will devote his entire time and attention exclusively to the employment; (2) that he has received full instructions and will comply therewith and with such other instructions as may be given from time to time; (3) that he will operate the bulk station in an efficient manner and perform such duties as may be required of him by the company in respect thereto; (4) that he will make sales for cash or credit at prices established by the company and will extend credit only as therein provided; (5) that he will not sell or pledge the goods of the company for his personal account; (6) (a) relates to the extension of credit to unauthorized customers; (b) that any sales made to unauthorized customers may be deducted from his salary or commissions; (c) that if he is dismissed or voluntarily quits the company shall have the right to make application in the manner specified of any moneys due him; (d) that he will repay any excess above the amounts due him of unauthorized sales; (e) that if he is dismissed from service or voluntarily quits, certain applications can be made of any sums thereafter to become due him.

(7) Not material.

(8) "That he will provide and maintain, at his own expense, whatever truck chassis may be necessary to make proper sale and delivery of the company's products (the com-

pany to furnish tank, bucket box and buckets) and will personally operate one of said vehicles daily, except Sunday. In the event of his inability to operate one of said vehicles he may, with the consent of the company, employ, at his own expense, a driver to operate said vehicle during such time as he is unable to operate the same."

(9) "That he will pay any and all taxes, license fees, excises, mileage fees and privilege taxes that may be levied or imposed upon said truck or trucks and/or upon the operation thereof."

(10) "That he will employ, at his own expense, suitable drivers to operate such other trucks as may be necessary upon the following conditions:"

(a) No driver to be employed except with the approval of the company; (b) all drivers shall comply with the rules and regulations of the company; (c) drivers not satisfactory shall be discharged; (d) that the agent will be responsible to the company for the acts of his employees.

(11) Agent's compensation for services rendered to be in accordance with the rider attached.

(12) Salary and commissions to be paid agent on or about the 25th day of current month and 10th day of the month following the month in which same are earned.

(13), (14), and (15) Not material.

(16) "The agent's services may be terminated by him upon ten days' written notice, however, the company may discharge agent at any time without notice, for cause, of which the company will be the sole judge."

By the attached rider the company agrees to pay the agent $44 per month, and in addition thereto specified commissions on all actual gallons sold and delivered by the agent. Salary to be based upon the operation of one truck. If in any month the number of trucks increases or decreases, said salary shall increase or decrease proportionately.

The question presented is whether Ireland, who operated under one of these contracts, was engaged in the transportation by motor vehicle and not included in the term of com-

mon motor carrier or contract motor carrier of property. No claim is made that the section relating to common motor carrier applies either to the company or to the plaintiff Ireland. The state argues that because under the contract Ireland is required to furnish the chassis and to operate the same at his own expense, he is engaged in the transportation of the company's property for hire. The company contends that although it had been the previous practice of its agents to take out a private motor carrier license, the license should in fact be taken out by it as a private motor carrier. A license issued either to a private motor carrier or to a contract motor carrier authorizes the operation of a specified vehicle. If the agent was required to furnish no part of the equipment, although required to pay the cost of operation out of his compensation, there would be no basis for the claim that he was a carrier. The act does not define the term "carrier." As commonly used, it means one who undertakes the transportation of persons or property for hire, and such persons are usually designated private carriers or common carriers. A contract carrier falls under the classification of a private carrier. One who undertakes by a contract to transport the property of another for hire is by the statutory definition a contract motor carrier. Private motor carriers manifestly are those who transport property by motor vehicle not under a contract for hire, in most cases property of their own. All persons transporting property for hire are by definition either common motor carriers or contract motor carriers. The question in this case is therefore, Does Ireland transport the property of the plaintiff company for hire?

Ireland is not a carrier of any sort. He is an agent transacting the business of his employer under the direction of the employer. The fact that he is required to furnish the chassis no more makes him a "carrier" than would the furnishing of a wheelbarrow or any other tool or implement. The mere fact that what he furnishes under his contract of employment goes on wheels is in no way determinative of

the character of the relationship existing between him and the Standard Oil Company. He is engaged, among other things, in selling and delivering his principal's goods, in the course of which he uses equipment furnished in part by him and in part by his employer. Under the facts stated in the complaint the company is a "private motor carrier" as defined in the act.

*By the Court.*—Order affirmed.