UNITED PARCEL SERVICE OF MILWAUKEE, Respondent, vs.
PUBLIC SERVICE COMMISSION, Appellant.*

*May 4—June 1, 1942.*

\* Motion for rehearing denied, without costs, on September 16, 1942.

For the appellant there was a brief by the *Attorney General,* and *Newell S. Boardman* and *H. T. Ferguson,* assistant attorneys general, and oral argument by *Mr. Ferguson.*

For the respondent there was a brief by *Quarles, Spence & Quarles* of Milwaukee, attorneys, and *J. V. Quarles* and *Kenneth P. Grubb* of Milwaukee, *Gordon Sinykin* of Madison, and *Fred G. Athearn* of San Francisco, California, of counsel, and oral argument by *Mr. J. V. Quarles* and *Mr. Sinykin.*

FAIRCHILD, J. The petitioner applied to the commission for an amendment of its license as a contract motor carrier. Petitioner, while operating under a license authorizing it to transport merchandise for three Milwaukee department stores within the southeast corner of Wisconsin, claimed by petitioner to "constitute the normal retail trading area of the city

of Milwaukee," purchased with the approval of the commission a contract carrier's license issued to one Johnson; this license allowed petitioner to transport "property in the city of Milwaukee and contiguous municipalities." The department-store license, although authorizing petitioner to serve a larger area, was limited to the three department stores named and was restricted in scope to the "transportation of retail merchandise between Milwaukee and the premises of retail customers of said contractors located within the boundaries [described in the license]." The Johnson license, though more limited as to area, authorized petitioner "to perform a general drayage service in the city of Milwaukee and contiguous municipalities." Under the Johnson license petitioner transported merchandise for seven or eight Milwaukee speciality shops, pursuant to "mutual bilateral contracts," performing a service for them similar to that furnished the department stores, that is, acting as the delivery department of the stores.

The application sought to extend its delivery service for all retail speciality shops to the area covered by the department-store license, describing the requested authority as:

"The transportation, under mutual bilateral contracts, of merchandise sold by department stores and retail speciality stores situated in the city of Milwaukee between Milwaukee and the premises of the retail customers of such contracting department stores and retail specialty stores located within the boundaries hereinafter described or within incorporated municipalities located on said boundaries, including the transportation of merchandise between any such department store or retail speciality store and its warehouse or branch store situated in the city of Milwaukee."

It is contended by the commission that the judgment of the circuit court is invalid because of the lack of formal findings of fact required by the provisions of sec. 270.33, Stats. The trial court did dictate into the record a memorandum opinion. In this opinion the court stated: "The order denying the ap-

plication is clearly both unreasonable and unlawful." In support of this conclusion the following statements appear in the opinion: (1) That petitioner had met the burden of proof placed on it by the provisions of sec. 196.46, Stats.,—"In fact, the proof is almost entirely on the side of the [petitioner];" (2) that the service is convenient,—"It is self-evident that it must be not only convenient but also profitable for the merchant to be able to obtain [petitioner's] service, or the merchant would not enter into a contract with the [petitioner]. That it is convenient for the customer no sane person will gainsay;" (3) that the service is necessary,— "If the merchant considers it necessary for the selling of his wares and the customer considers it necessary for the purchasing of his necessities that the [petitioner] be their mutual delivery agent, and they are both willing to pay the freight, why should they not be permitted to have their mutual desires satisfied?" The opposition to the extension of the license raised by competitors and based upon the financial burden to them should not be of "sufficient consideration to deny this service." The trial court further stated in the opinion that the order modifying the Johnson license "was both unreasonable and unlawful" for the reasons that, (1) the commission misconstrued the statement of counsel upon which it based this portion of the order; and (2) "in any event, the [petitioner] was entitled to a hearing on such an order by the express provisions of section 194.46 of the statutes." It may be conceded that these findings are not in exact compliance with the rule imposed by the statute. "Trial courts should not in making findings incorporate therein arguments, citations of authority, and other extraneous matters." *Petrus v. Pierick* (1929), 199 Wis. 147, 150, 225 N. W. 695. Assuming that the statute in question applies to a proceeding of this nature, nevertheless the failure, in so far as there is a failure, to comply with the rule in the present case does not require that the case be returned for specific findings. The opinion

of the trial court is capable of aiding us in determining what it found as facts. *Will of Daniels* (1937), 225 Wis. 502, 274 N. W. 435. And it further appears that the court has forcibly expressed its views on the essential questions. *White v. Machovec* (1934), 214 Wis. 458, 253 N. W. 389.

Although in a proceeding to set aside an order of the commission the burden of proof before the trial court rests upon the party adverse to the commission, sec. 196.46, Stats., nevertheless upon appeal to this court the findings of the trial court must be sustained unless they "are against the great weight and clear preponderance of the evidence." *Wisconsin P. & L. Co. v. Public Service Comm.* (1939) 232 Wis. 43, 58, 286 N. W. 581; *Wisconsin Telephone Co. v. Public Service Comm.* (1939) 232 Wis. 274, 320, 321, 287 N. W. 122, 287 N. W. 593. And the evidence is not seriously in dispute and the testimony before the commission is the same as that before the court and warrants but one conclusion under the law.

The commission contends that petitioner in seeking to serve a specified portion of the general public thereby sought to become a "public" carrier. Holding that it is a carrier recognized under the common law as a common carrier, the commission ruled that as a condition to the obtaining of a contract-carrier license under the provisions of ch. 194, Stats., petitioner was required to show that *public* convenience and necessity required the extension of its services as against the mere convenience and necessity of the shipper, carrier, and receiver.[1]

---

[1] In its administration of the Motor Transportation Act the commission has classified contract carriers "as private and public," defining the latter as "those who may haul for anyone, or anyone of a certain class of persons, but who cannot be authorized under a common-carrier certificate by reason of having no regular route or fixed termini." The commission has ruled as to this subclass: "Their service is for the convenience of the public. They are required to show that public necessity requires their operation in order to secure authority therefor; and the public has a right to demand from them

But motor carriers are classified into three categories by sec. 194.01, Stats., namely, (1) "Common motor carrier," that is "any person who holds himself out to the public as willing to undertake for hire to transport by motor vehicle between fixed termini or over a regular route upon the public highways, passengers or property," sec. 194.01 (5) (petitioner is not in this classification); (2) "Contract motor carrier," that is "any person engaged in the transportation by motor vehicle of property for hire and not included in the term 'common motor carrier of property,'" sec. 194.01 (11) (it is in this classification that petitioner falls); and (3) "Private motor carrier" that is "any person except a common or contract motor carrier engaged in the transportation of property by motor vehicle other than an automobile or two-wheeled trailer used therewith," sec. 194.01 (14). Different rules, regulations, and permit requirements are established by the law for the regulation of the various classes of carriers as therein defined.

At common law carriers were classified on the basis of their nature and character as private or common. *Standard Oil Co. v. Public Service Comm.* (1935) 217 Wis. 563, 259 N. W. 598; 9 Am. Jur. p. 429, § 2; 13 C. J. S. p. 25, § 1. We are concerned, however, with a statute regulating motor carriers. In determining the meaning and effect of the Motor Vehicle Transportation Act, it is well to bear in mind various principles governing the validity of such legislation and motivating its enactment. The power of the state to enact such statutes springs from two sources, one, the power to regulate the use

adequate service at reasonable rates." Wis. Adm. Orders, Red Book (1942), p. 293 (MC-161; June 25, 1934).

The application form (that the commission has been authorized to prescribe, sec. 194.35, Stats.) filed by petitioner bears the printed statement: "In support of said application, applicant avers that to the best of his knowledge, information, and belief the foregoing services are required by the convenience and necessity of those for whom they will be available."

of public highways, *Stephenson v. Binford* (1932), 287 U. S.
251, 53 Sup. Ct. 181, 77 L. Ed. 288, 87 A. L. R. 721; 37
Am. Jur. pp. 528, 533, 534, §§ 7, 19; note (1933), 87 A. L. R.
736; note (1937), 109 A. L. R. 553 *et seq.;* the other, the
power to regulate common carriers, *Monroe v. Railroad
Comm.* (1919) 170 Wis. 180, 174 N. W. 450, 9 A. L. R.
1007; 9 Am. Jur. 449, § 40; 13 C. J. S. pp. 44, 45, §§ 15, 16.
Motor-carrier laws such as ch. 194, Stats., often reflect a three-
fold legislative purpose, namely, (1) the transportation busi-
ness; (2) the act of transportation; and (3) the securing of
a return for the use of public highways, 37 Am. Jur. 533,
§ 17; note, 109 A. L. R. 551, 552. This threefold purpose
is apparent in the Wisconsin statute. Thus sec. 194.06 de-
clares that common and contract carriers are affected with
public interest; regulations are established prohibiting dis-
crimination in rates or services by contract carriers, sec.
194.34 (5) ; licenses and certificates of convenience and neces-
sity are required, secs. 194.34, 194.23; in some instances rates
and regulations are subjected to the rule of reasonableness,
sec. 194.19; the use of the highways is protected, secs. 194.18
(2), 194.36 (2), 194.43; and taxes for highway use are im-
posed, sec. 194.50. Under this statute the common-law dis-
tinction between private and common carriers is frequently
blurred (see 37 Am. Jur. pp. 538, 539, § 26; note (1936), 103
A. L. R. 274, 278, collating authorities illustrating the modern
tendency to obliterate the common-law distinction between
common and private carriers in the field of motor transporta-
tion), and new distinctions are drawn. It is established that
the state can properly impose upon private or contract carriers
regulations similar to those governing common carriers,
*Stephenson v. Binford, supra; 37* Am. Jur. pp. 536, 537, § 23;
note, 109 A. L. R. 556; although it has been held that the state
cannot go to the length of requiring a private carrier to be-
come a common carrier, *Frost v. Railroad Comm.* (1926)

271 U. S. 583, 46 Sup. Ct. 605, 70 L. Ed. 1101, 47 A. L. R. 457; 37 Am. Jur. pp. 536, 540, §§ 23, 29. Whereas the earlier problem in respect to motor transportation was whether a public service commission had jurisdiction over a common carrier by bus or truck in the absence of a statute particularly referring to that form of transportation, notes (1927), 51 A. L. R. 820; (1936) 103 A. L. R. 273; the problem of today is generally one bearing upon the construction of the motor-transportation statute, note, 103 A. L. R. 274.

The differences and distinctions between the three classifications established by ch. 194, Stats., exist and must be reckoned with and, in dealing with matters that are as involved as these with general principles of regulation in the interest of fairness, they are not to be lost sight of in the attendant difficulties. Nor are we to overlook the fact that so far as individual rights may be permitted to prevail they are to be considered. It may be impossible to attain the last degree of an equitable distribution of loss and advantage in each instance and the commission or the court may be of the opinion that a more effective method exists than the one outlined by the legislature but when the distinctions between carriers are fixed by statute they must be followed. The power and authority of the commission to regulate contract carriers must be found within the statutes, *Monroe v. Railroad Comm.* (1919) 170 Wis. 180, 174 N. W. 450, 9 A. L. R. 1007; *Wisconsin Telephone Co. v. Public Service Comm., supra,* p. 326.

The contract carrier within proper limits is protected as to its rights to enter into contracts. Competition when it could reasonably exist was to be permitted. One of the purposes of the Motor Vehicle Transportation Act, illustrated by the provisions of sec. 194.36, Stats., as of the Federal Motor Carrier Act (1 Motor Carrier Cases, I. C. C. Rep. (1937), 628), was to protect the common carrier from the contract carrier, and unfair competition as between common and contract car-

rier was sought to be eliminated. The statute requires the commission before granting a license to a contract motor carrier to take into consideration existing transportation facilities in the territory for which a license is sought, including *common motor carriers* and steam and electric railways. Sec. 194.34 (1). The commission is "to supervise and regulate . . . in all matters directly or indirectly impairing the efficient public service of any authorized common carrier or common carriers by motor vehicles or by steam or electric railroad then adequately serving all or any part of the same territory, in conformity with the purposes of this chapter." Sec. 194.36 (9). The statute does not attempt to fix at a common level existing conditions. Changes and improvements were to be expected. The prevention of rebates and unjust discrimination were objects of the legislation, not the unreasonable smothering of growth or the unnecessary deprivation of the energetic and enterprising of opportunity to grow and serve.

A common motor carrier is required to obtain a certificate from the commission. And "before granting a certificate or amendment the commission shall take into consideration existing transportation facilities in the territory proposed to be served, including common and contract motor carriers and steam and electric railways," sec. 194.23 (1), Stats. The commission is authorized to grant or refuse such certificate "as the public interest may require, upon a finding of public convenience and necessity."

A contract carrier is required to obtain a license and such license may be issued or denied "as the public interest may require, upon a finding of convenience and necessity." Sec. 194.34 (1), Stats. In ascertaining whether such license should issue the commission must take into account "existing transportation facilities in the territory for which a license is sought, including common motor carriers and steam and electric railways," but no consideration is given to other contract carriers with respect to competition.

In denying the license here sought the commission held that:

"The applicant seeks to serve any such [specialty] shop or [department] store in the city of Milwaukee which desires to avail itself of its services and which will comply with its terms. Such a general service could be offered only on terms and conditions open to all persons similarly situated and subject to regulation as a common-law common carrier. This is in effect a holding out to the public of a definite service and in our judgment such an application places upon the applicant the burden of showing by affirmative evidence that the proposed operation is in the public interest and is required by public convenience and necessity. We are of the opinion that the testimony fails to make such a showing."

It is clear from the opinion of the commission, from the argument in support thereof on this appeal, and from previous practice and administrative interpretation that the denial of the license to petitioner was based on the theory that as a "public" carrier, that is a "common" carrier within the common-law meaning of the term, the petitioner was required to meet the standard of "public convenience and necessity" rather than the less stringent standard of mere "convenience and necessity." But the legislature made no express subclassification within the class of contract carriers, nor can such subclassification be inferred in respect to the basis established for the issuance of a license. This leaves open all questions relating to discrimination and duty to serve under sec. 194.34 (5), Stats., created by ch. 215, Laws of 1941, passed subsequently to the filing of the application herein and therefore not involved in this proceeding. There is a valid distinction provided for in the statutes between the "public convenience and necessity" to be looked for in the case of a common motor carrier and the "convenience and necessity" to be considered in licensing a contract motor carrier. The reasons therefor appear in the law as written and the trial court's interpretation of the rule of convenience and necessity in the case of the contract carrier as against the rule of public convenience and necessity in the case of the common motor carrier is correct. If there is a reasonable need apparent for the use of the service

and if the common carrier is not unduly interfered with nor the public highways unduly burdened, a case of convenience and necessity exists. *Central Truck Lines, Inc., v. Florida State Railroad Comm.* (1941) 146 Fla. 521, 1 So. (2d) 470; see also *Matter of Village of Bronxville v. Maltbie* (1940), 284 N. Y. 206, 30 N. E. (2d) 475. The statutory scheme is whole and complete as drawn and although perhaps experience may suggest the advisability of the distinction made by the commission, as yet no basis for it appears in the statutes to which the commission owes its existence and its authority.

We agree with the trial court therefore that the order of the commission upon the evidence in the case is arbitrary and unreasonable and was properly set aside on the ground that the evidence warranted only a finding in favor of petitioner as to the existence of "convenience and necessity."

In view of these conclusions regarding the allowance of the amendment to the license, it is unnecessary to consider the reasonableness of the order in respect to the modification of the existing license, since it is clear that petitioner consented to a modification upon the granting of the authority applied for.

It is considered that the judgment below is correct except that it should contain a direction to the commission to allow the amendment as prayed for and to modify the license as stipulated by petitioner.

*By the Court.*—Judgment modified so as to direct the commission to amend the license as prayed for and to modify the license as stipulated by petitioner, and as so modified affirmed.

The following opinion was filed September 16, 1942:

FOWLER, J. (*concurring*). From the facts stated in the opinion of the court it appears that on acquiring a license from one Johnson the plaintiff received from the commission a license authorizing it to serve the three department stores throughout the entire district covered by its original license

and to serve whomever might apply to it for service within a smaller district covered by the Johnson license. Under this license the plaintiff was serving the three department stores and some six or eight specialty stores with whom Johnson had contracts. The plaintiff petitioned the commission to amend its license so as to permit it to serve such specialty stores as it might contract with throughout the entire district covered by the original department store's license.

The commission denied the amendment on the ground of its finding that "the proposed additional operations of the applicant are not in the public interest and are not required by public convenience and necessity." From this order plaintiff appealed to the circuit court and that court reversed the order on the ground that the order is "unreasonable and unlawful" and directed the commission to enter a "proper and lawful order." The commission appealed from this judgment. This court affirmed that judgment and the commission has moved for a rehearing.

The commission in granting to the plaintiff the license the plaintiff applied to the commission to amend must have found that the existing facts entitled the plaintiff to serve the three department stores throughout the entire district covered by the original license. If such facts were that the service granted by that license was in the public interest and required by public convenience and necessity, as the commission contends it must find in order to grant a license as a contract carrier, then the commission must have found that the service performed by the plaintiff for the three department stores throughout the entire district covered by the original license was "in the public interest and is required by public convenience and necessity." The same facts existed and applied as to service to the specialty stores the plaintiff was serving that existed and applied to the three department stores.

If those facts warranted continuance of the service to the department stores throughout the entire district, they necessarily required the permitting of service throughout the en-

tire district to the specialty stores. If it was reasonable and lawful for the commission to continue to the department stores the service the plaintiff was rendering them pursuant to the original license, then manifestly it was reasonable and lawful for plaintiff to render the same service to the specialty stores it was serving and the judgment of the court that the refusal of the commission to permit such service to the specialty stores was "unreasonable and unlawful" is manifestly correct. The commission acted capriciously and arbitrarily in denying to one set of stores, the specialty stores plaintiff was serving, the service it permitted to another set of stores, the department stores, and in denying to the plaintiff the right to contract with those specialty stores for service throughout the entire district the same as it permitted it to contract with the department stores. The commission is bound by the Fourteenth amendment to the United States constitution the same as are the courts. It cannot deny either equality or due process. For the reasons above stated the judgment of the circuit court is correct.

The parties hereto are trying to litigate a question that is not involved in this proceeding. The commission wants the court to determine that the plaintiff must serve everybody who wants its service, because, as they contend, it is a common carrier, and a common carrier must so serve. The plaintiff wants the court to determine that it is only required to serve such persons as it may choose to serve, because, as it contends, it is not a common carrier. That question can only be determined in litigation between the plaintiff and some person to whom the plaintiff has denied service. If the plaintiff shall refuse as a contract motor carrier to serve some person who has applied to it for such service, such person may take appropriate proceedings to compel the plaintiff to render him or it such service. No such person is before the court in this proceeding. This court is therefore without power to make an effective decision upon that question. Whatever it has said upon that question in its decision is *obiter*.