M. CAPP MANUFACTURING COMPANY, Appellant, v. MOLAND and others, Respondents.

*January 8—February 4, 1964.*

For the appellant there was a brief by *Smith, Puchner, Tinkham & Smith,* and oral argument by *C. Duane Patterson,* all of Wausau.

For the respondents there was a brief by *Genrich, Terwilliger, Wakeen, Piehler & Conway,* attorneys, and *Roger Rouse* of counsel, all of Wausau, and oral argument by *Mr. Rouse.*

DIETERICH, J.  The testimony reveals the following facts. The door and window units were purchased by Capp from the Crestline Company, and were in apparent good condition when they were loaded onto Moland's truck in Wausau. The Crestline employees who loaded the truck were experienced in their work, and they testified that they used the loading methods normally used by Crestline. The doors included in the shipment were placed toward the front of the trailer and stacked in an upright position. The window units were loaded behind the doors, and were stacked in an upright position flush up against each other. The load of windows was separated from the load of doors by pieces of cardboard, although nothing was placed between the individual units. The rows of windows ran perpendicular to the length of the trailer, beginning flush with the right wall and leaving a gap of a few inches all along the left side. Two boards were nailed together and placed across the top center of each row of windows. Nails were driven through the boards into the tops of the individual window units. The boards were placed so that their ends fit against the sides of the trailer, although the metal trailer wall prevented them from being attached at each side. Only the last row of windows had any bracing at the bottom. Excess space at the rear of the truck after all the windows were loaded, was taken up by a wooden brace on the floor. The testimony of two Crestline employees was that the load was solid and well braced, although one of the men said at one point that there was a little "play" on the bottom. He later said there was no play. Moland's driver did not inspect the load carefully when he picked it up at the Crestline plant, but testified that he looked in through the rear door, and that the units were apparently packed in tightly. The driver did not examine the manner in which the windows were packed. The driver added the initials "SLC" to the bill of lading, and the Crestline shipping agent accepted the bill

with this notation. The driver took the truck to the Wausau terminal. Two days later another driver picked up the load and left for St. Paul, Minnesota. The trailer doors were still sealed when he arrived at the St. Paul truck terminal.

There was testimony by Moland's inspector that the trailer was in no way damaged from the outside, and that it was not involved in any kind of an accident that would cause damage to the trailer itself. Moland's driver testified that the trip from Wausau was uneventful and in no way any rougher than usual. The truck remained at the St. Paul terminal for a few days before it was taken to the Capp plant in Minneapolis. There was no testimony as to what, if anything, occurred during this time and also during the two days the loaded truck remained at the Wausau terminal before the trip began.

When Capp employees unloaded the truck at Minneapolis it was discovered that 15 of the 60 window units shipped had suffered damage—consisting of broken glass, frames, loose screws, etc. Moland was notified and its inspector was sent to inspect the alleged damage. In the damage report, the question, "Do you consider adequately packed or protected?" was answered "Yes" by the inspector. The inspector testified, however, that when he arrived at the Capp warehouse the trailer had been completely unloaded, that he did not observe any of the unloading operation, and that he at no time saw how the goods had been packed. He testified that Capp's unloading clerk told him the load was supposed to have been "securely packed," and that when he answered the question on the inspection-report sheet, he "took the clerk's word for it."

The only disputed testimony concerned the initials "SLC" which was indorsed on the bill of lading by Moland's driver when the load was picked up at the Crestline plant. Robert Eggebrecht, the Crestline employee who was in charge of the loading, testified that he knew the initials meant "ship-

per's load and count," but stated that these letters had no more significance to him than that the shipper (Crestline) did load and count the merchandise shipped. Witnesses for Moland testified over objection that in the trucking business the initials "SLC" are considered to have legal significance, in that in addition to indicating that the shipper did load and count the goods, these letters mean that the shipper will assume the loss for damage incurred as a result of improper packing or loading.

The appellant contends that the findings of the trial court were against the great weight of the evidence. In a memorandum decision the trial court stated that the inscribing of the letters "SLC" on the bill of lading operated so as to limit the liability of the shipper, even though the Crestline employee, Eggebrecht, claimed not to be aware of the legal significance of these letters.

Sec. 120.23 (2), Stats., provides in part that:

"The carrier may, . . . by inserting in the bill the words 'shipper's load and count' or other words of like purport indicate that the goods were loaded by the shipper and the description of them made by him; and if such statement be true, the carrier shall not be liable for damages caused by the improper loading or by the nonreceipt or by the misdescription of the goods described in the bill."

After citing this statute, the trial court stated that the testimony of the men who loaded the truck at the Crestline plant was at best only their own conclusions as to whether or not the loading was done properly, and that no testimony was offered that theirs was the approved way of loading used by shippers of glass windows generally. The record reveals that the testimony on this point was only that the window units were loaded in accord with the methods normally used by Crestline. The trial court also noted that evidence submitted by the defense indicated that the windows

were in no way attached together at the bottom, even though they were stacked on end in the truck. The only testimony as to the manner in which the truck was loaded came from Crestline employees who were called as witnesses for the plaintiff-appellant.

The trial court did not make any express findings of fact in the instant action. Where no formal findings are made, the trial court's decision is accorded the same consideration and weight as the findings. *United Parcel Service v. Public Service Comm.* (1942), 240 Wis. 603, 4 N. W. (2d) 138, 5 N. W. (2d) 635, and *Estate of Wallace* (1955), 270 Wis. 636, 72 N. W. (2d) 383. A reading of the record and the memorandum decision is sufficient to apprise this court of the trial court's views upon the essential facts. In arriving at the conclusion that Moland was not liable, the trial court must have determined that the goods were improperly packed by the shipper, and that such improper packing caused the damage to the window units.

Capp's complaint also included a cause of action based upon negligence. The trial court found that there was no direct evidence of any negligence as to the manner in which Moland hauled the merchandise.

Moland's drivers testified that there were no accidents or unusual events during the trip from Wausau to Minneapolis, and there was testimony that the trailer, when delivered to the Capp warehouse for unloading, was in no way damaged from the outside or injured in any visible way. There was also testimony that no notice of any accidents involving Moland trucks was reported to the terminal managers at Wausau or St. Paul. Capp did not present any direct evidence of Moland's negligence but relied solely on presumption and inference.

Upon the record before this court, we determine that the findings of the trial court that the goods were improperly

packed, that the improper packing was the cause of the damage, and that there was no negligence on Moland's part, are not against the great weight and clear preponderance of the evidence and we affirm on that basis. *Nehls v. Nehls* (1963), 21 Wis. (2d) 231, 239, 124 N. W. (2d) 18.

*By the Court.*—Judgment affirmed.

CURRIE, C. J. (*concurring*). The court's opinion fails to decide an issue which was strenuously argued by the parties both in the briefs and on oral argument. This is: Upon whom falls the burden of proof to establish the cause of damage where the bill of lading contains the words "shipper's load and count."

At common law the burden of proof was on the common carrier of goods to show that their damage in transit was not due to the fault of the carrier. 9 Am. Jur., Carriers, p. 941, sec. 835, states:

"When proof is given by the plaintiff that goods, delivered to a carrier in good condition, were damaged while in the hands of the carrier, a presumption arises that the damage was due to its negligence and the burden of proof is upon it to show that it was free from negligence, or that, notwithstanding its negligence, the damage occurred without its fault; that is, that its negligence did not contribute to the damage. Accordingly, the mere proof of delivery of the goods to the carrier in good order, and of their arrival at the place of destination in bad order, makes out a prima facie case against the carrier, so that if no explanation is given as to how the injury occurred, the carrier may be held responsible."

Sec. 120.23 (2), Stats., provides in part as follows:

"The carrier may, also, by inserting in the bill the words 'shipper's load and count' or other words of like purport indicate that the goods were loaded by the shipper and the description of them made by him; and if such statement be true, the carrier shall not be liable for damages *caused by*

the *improper loading* or by the nonreceipt or by the misdescription of the goods described in the bill." (Italics supplied.)

There is nothing in this statute which is indicative of any legislative intent that it was to work a change in the common law with respect to burden of proof. The statute merely adds one more exception to a carrier's absolute liability for damage in transit. To take advantage of the statute, the instant defendants not only had the burden to establish that the windows shipped under the bill of lading marked "shipper's load and count" were improperly packed by the shipper Crestline, but also that the damage to the windows was caused by such improper packing. If defendants failed to meet this burden of proof, plaintiff would be entitled to recover for the damage caused to the windows.

I join in the court's opinion because under the evidence the trial court could find defendants met this burden of proof.

I am authorized to state that Mr. Justice BEILFUSS joins in this concurring opinion.