VANDERWERKER and another, Appellants, vs. CITY OF SUPERIOR and others, Respondents.

*January 13—February 6, 1923.*

*Public utilities: Jitneys: Jurisdiction of railroad commission: Control by municipalities: Appeal: Temporary injunction: Final determination: Obiter.*

1. By the adoption of secs. 1797—62 to 1797—68, Stats. 1921 (ch. 546, Laws 1915—the Jitney Law), the legislature through its administrative body, the railroad commission, assumed jurisdiction over street transportation by motor vehicles similar to that afforded by street railways, and all questions as to what shall be the general routes and the territory, the character of the service and the hours of operation, all regardless of any other service being then furnished, are by such law vested in the determination of the railroad com-

mission, subject to judicial review in the same manner as are its other orders; and such determinations are therefore beyond municipal interference or restriction.

2. The legislative control of jitney vehicles for carriage of passengers, either directly or through its designated administrative body, is superior to any conflicting action of the legislative body of a municipality.

3. Sec. 1797—68, Stats., providing that the city, village, or town within or through which any motor vehicle shall be operated may require that local consent for the operation thereof be procured, and as a condition of such consent may require reasonable compensation for the repair and maintenance of pavements and bridges, compensation for traffic regulation, and any other expense occasioned by the operation of such vehicle, does not authorize a municipal ordinance imposing on an operator of motor busses conditions substantially nullifying the certificate of license issued to him by the railroad commission, such local consent being apparently conditioned upon reasonable provision to secure the municipality on the question of consequent expense merely. *Monroe v. Railroad Comm.* 170 Wis. 180, limited.

[4. As to whether such local consent can be arbitrarily withheld, no opinion is expressed.]

5. When a question is not before the court for decision and is not determined, an expression with reference thereto is not to be construed as a determination of it.

6. Where the appellate court determines in an appeal from an order refusing an injunction *pendente lite* that plaintiff is entitled to a permanent injunction, it will direct judgment for plaintiff without remanding the record for further proceedings, the entire situation being presented by the complaint, answer, and affidavits.

APPEAL from an order of the circuit court for Douglas county: W. R. FOLEY, Circuit Judge. *Reversed.*

The plaintiffs as copartners own and operate motor or jitney vehicles for the carriage of passengers in the city of *Superior.* That city, here defendant, in May, 1915, passed an amending ordinance providing for licenses for omnibuses, hacks, drays, jitneys, and other vehicles, with express provisions regulating the so-called jitneys, and requiring among other things that the operators of any such motor-bus shall submit to an examination by the city au-

thorities. A license to so operate was required for which a fee was exacted. The plaintiffs on May 2, 1922, paid to the city of *Superior* the required fee for and obtained such license to operate its business pursuant to said ordinance and which said license purported to be valid for the ensuing year.

Prior to such time the plaintiffs had made application to the railroad commission of Wisconsin and had had issued to them by that commission a certificate under the provisions of secs. 1797—62 to 1797—68, Stats., for the transportation of passengers for hire along Tower avenue, Belknap street, West Seventh street, L avenue, and West Fifth street in said city of *Superior*.

June 6, 1922, the city of *Superior* adopted an ordinance, No. 943, the substance of which, so far as deemed material here, is as follows:

Sec. 1. That no jitney as defined by sec. 1797—62, Stats., shall operate upon any of the public streets, avenues, or bridges of said city without the consent of the city council and the issuance of a license.

Sec. 2. That all applications for such licenses shall contain the information required by sec. 1797—64 and in addition thereto the number of vehicles to be used, the character and weight of each vehicle, and the passenger capacity of each vehicle. That every such application shall be accompanied by a bond to the city of *Superior* in the penal sum of $1,000 conditioned that the schedule set forth in the application shall be maintained, continuous operation furnished, and that stops will be made at all street intersections along the route to receive and discharge passengers, and that the operator will obey all the orders of the council of said city, the ordinances thereof, and the laws of the state of Wisconsin.

Sec. 3. That upon such application and bond being filed a license should be granted by a majority vote of all the members of the council.

Sec. 4 provided for the fees as compensation for all expense occasioned to the city of *Superior* by the operation of such motor vehicle of $10, $15, and $25, dependent upon the seating capacity of such vehicles, and that such license when granted, signed by the mayor, and countersigned by the city clerk shall remain in force for the period of one year from date unless sooner revoked as in said ordinance provided.

Sec. 5. That no motor vehicle for which a license be granted under the ordinance shall be operated upon Tower avenue between the south line of North Third street and the south line of Twenty-first street or on Belknap street between the west line of Tower avenue and the east line of Hill avenue in said city, except that any such vehicle may cross such streets upon any other street crossing at right angles; "provided that any person, firm, or corporation operating a line of auto busses in interstate business between Duluth and *Superior* upon a regular schedule maintained during the entire year and with a service not less frequent than thirty minutes shall be permitted to operate such line of auto busses upon any portion of Tower avenue."

Sec. 6 requires, prior to operation under such license, the procuring of a policy of insurance issued by some standard insurance company indemnifying such operator against liability for damages to persons by reason of the negligent use and operation of such vehicle, not to exceed $5,000 to any one person nor $10,000 for any one accident, and further indemnifying such operator from liability for damages to property not exceeding $1,000.

Sec. 7 provided penalty for violation of any of the provisions of the ordinance and that upon violation of any of the terms and conditions of such license or bond, or of the said ordinance, such license shall be subject to revocation by the council upon ten days' notice and a hearing.

Sec. 8. . . .

Sèc. 9. The council intends sec. 6 and the provisions thereof to be a separable part of the ordinance, so that any part of said sec. 6 or the whole may fail without affecting any other part or provision of the ordinance.

Sec. 10 provided for the taking effect of the ordinance after its passage and publication.

The plaintiffs commenced these proceedings to enjoin and restrain the city authorities from carrying out their declared intention and purpose of enforcing as against the plaintiffs the said ordinance No. 943.

Upon hearing in the circuit court upon complaint, answer, and affidavits, the plaintiffs' application for a temporary injunction pending the trial of said action was denied with $10 costs. From such order the plaintiffs have appealed, a stay being allowed.

For the appellants there was a brief by *Pickering & Rieser* of Superior, and oral argument by *R. M. Rieser.*

For the respondents there was a brief by *T. L. McIntosh* and *C. M. Wilson,* both of Superior, and oral argument by *Mr. McIntosh.*

A brief was also filed by *C. R. Fridley* of Superior, as *amicus curiæ.*

ESCHWEILER, J. The ordinance which it is admitted the defendants purposed to enforce would materially impair the rights of plaintiffs to operate as a common carrier upon certain of the streets of the city of *Superior* and would require the furnishing of a surety bond in double the amount as well as for an additional liability over that required under the state law. The designation by the railroad commission of the streets and public highways over which it deems that such service is reasonably required for the accommodation of the public is beyond question a substantial element in its consent and permission and in the rights and liabilities thereby established.

By the adoption of the so-called Jitney Law (ch. 546, Laws of 1915, now secs. 1797—62 to 1797—68, Stats.), the legislature, through its administrative body, the railroad commission, assumed jurisdiction over the subject matter of such service as that which is concededly being afforded by the plaintiffs, that is, street transportation by motor vehicles similar to that afforded by street railways. *Monroe v. Railroad Comm.* 170 Wis. 180, 174 N. W. 450, 9 A. L. R. 1007, note at p. 1011. All the questions as to what shall be the general routes and the territory, the character of the service, and the hours of operation, all regardless of any other service being then furnished, are by such law vested in the determination of the railroad commission, subject to judicial review in the same manner as are its other orders, and such determinations are therefore beyond municipal interference or restriction.

The situation presented is one where if the plaintiffs, relying upon the certificate of the railroad commission, should undertake to operate in accordance with the same upon the streets therein designated, there would be an immediate conflict with the conditions of the ordinance. On the other hand, they could not operate at all in that capacity on the streets in *Superior* without the certificate of the railroad commission, ordinance or no ordinance, and yet if they be required to comply with the conditions of the ordinance there is a substantial destruction as to plaintiffs of rights permitted to them by the state. To uphold the ordinance is to substantially nullify the certificate of the railroad commission. This cannot and ought not be done. The legislative control, either directly or through its designated administrative body, is superior to any conflicting action of the legislative body of the municipality. *Duluth St. R. Co. v. Railroad Comm.* 161 Wis. 245, 253, 255, 152 N. W. 887; *Baraboo v. Dwyer,* 166 Wis. 372, 377, 165 N. W. 297; *Hickman v. Wellauer,* 169 Wis. 18, 24, 171 N. W. 635;

*Holmes Electric P. Co. v. Williams,* 228 N. Y. 407, 420, 127 N. E. 315; *Ex parte Daniels,* 183 Cal. 636, 192 Pac. 442, 21 A. L. R. 1172, with note at p. 1186; *Public Utility Comm. v. Garviloch,* 54 Utah, 406, 181 Pac. 272. The rule is expressly recognized in the cases cited on behalf of defendants. *Oshkosh v. Campbell,* 151 Wis. 567, 569, 139 N. W. 316; *Brittingham & Hixon L. Co. v. Sparta,* 157 Wis. 345, 349, 147 N. W. 635.

In many states the power to regulate such traffic is directly given to the municipalities in whole or in part, rather than exercised by the legislature or a state administrative body, as appears from the following among many other cases that might be cited: *Melconian v. Grand Rapids,* 218 Mich. 397, 188 N. W. 521; *Dickey v. Davis,* 76 W. Va. 576, 85 S. E. 781, Pub. Util. Rep. 1915E, 93, L. R. A. 1915F, 840; *Decker v. Wichita,* 109 Kan. 796, 202 Pac. 89; *Jitney Bus Asso. v. Wilkes-Barre,* 256 Pa. St. 462, 100 Atl. 954; *San Antonio v. Fetzer* (Tex.) 241 S. W. 1034. Clearly and because of that distinction, such cases, many of which were called to our attention on defendants' behalf, are not in point here.

The provisions of sec. 1797—68, Stats., to the effect that the city, village, or town within or through which any such motor vehicle shall be operated may require that local consent for the operation thereof be procured, and that as a condition of such consent may require reasonable compensation for the repair and maintenance of pavements and bridges, compensation for traffic regulation, and any other expense occasioned by the operation of such vehicle, cannot be construed to warrant the sustaining of this ordinance. This local consent can apparently be conditioned only upon reasonable provision to secure the municipality on the question of consequent expense merely. Whether such local consent can be arbitrarily withheld by the municipality is not before us and we express no opinion upon such a matter.

This sec. 1797—68 was referred to in *Monroe v. Railroad Comm.* 170 Wis. 180, 174 N. W. 450, and at page 185 it was said: "The several municipalities in which such service is proposed may give *or withhold* local consent for their operation, and as a condition," etc. The writer assumes responsibility for the unnecessary insertion of the italicised words in the quotation just given. Such expression must not be construed as a then determination by this court that such consent could, at the mere will or wish of the municipality, be withheld altogether. Such question was not before this court then and was not then determined.

The questions here determined against the contentions of defendants go to the whole substance of the ordinance, and for that reason the ordinance must fall. The entire situation being presented by the complaint, answer, and affidavits, nothing would be gained by remanding the record for further proceedings, and therefore the plaintiffs are entitled to the injunction for which they brought this action.

This disposition of the case makes it unnecessary for us to discuss or determine other questions presented and argued, namely, how far the license obtained by plaintiffs under the old ordinance, purporting on its face to be valid for a year, is binding upon the city during such specified time; and whether the classification attempted to be made by the new ordinance is valid, whereby busses furnishing the same kind of service as plaintiffs propose to furnish but extending their service across the state line into Duluth, may be granted the privilege to run on a certain portion of a designated street in the city of *Superior* from which, by the same ordinance, the plaintiffs were to be excluded.

*By the Court.*—Order reversed, with directions to enter judgment in favor of the plaintiffs.