CITY OF MILWAUKEE, Appellant, vs. RAILROAD COMMIS-
SION OF WISCONSIN and another, Respondents.

*December 14, 1923—January 15, 1924.*

*Street railways: One-man cars: Standard of service: Creation and
maintenance by legislature: Jurisdiction of municipality: Of
railroad commission.*

1. It was within the power of the railroad commission to require
a street car company in Milwaukee to install one-man safety
cars in its local service, though under the Home Rule Act
(Laws 1913, ch. 678) and its special charter the city of Mil-
waukee had jurisdiction to pass an ordinance requiring every
street car to be run by two men.  p. 499.
2. The legislature has power to create and maintain a proper
standard of service to be rendered by a railroad, and cannot
delegate such power in whole or in part to a municipality.
p. 501.
3. Sec. 1797—3, Stats. 1921, which requires every railroad to fur-
nish reasonably adequate service and facilities, creates the
legislative standard; and hence when the railroad commis-
sion, pursuant to its administrative authority and from the
facts found, declares the standard with respect to reasonable-
ness and adequacy under sec. 1797—12, there is no exercise
of legislative authority by the commission.  p. 502.

APPEAL from an order of the circuit court for Dane
county: E. RAY STEVENS, Circuit Judge.  *Affirmed.*

The appeal is from an order sustaining separate general
demurrers of defendants to the plaintiff's complaint.

*John M. Niven,* city attorney, for the appellant.

For the respondent *Railroad Commission* there was a
brief by the *Attorney General* and *Franklin E. Bump,* assist-
ant attorney general, and oral argument by *Mr. Bump.*

For the respondent *Milwaukee Northern Railway Com-
pany* there was a brief by *Bottum, Hudnall, Lecher &
McNamara* of Milwaukee, and oral argument by *Geo. B.
Hudnall.*

DOERFLER, J.  This action is brought to set aside an
order of the *Railroad Commission* authorizing defendant
*Milwaukee Northern Railway Company* to install one-man

cars on its local street railway in the city of *Milwaukee.*
It is alleged in the complaint that the railway company filed
a petition with the *Commission* requesting authority to in-
stall, maintain, and operate so-called one-man safety cars
on such local service and that a hearing, pursuant to due
notice, was had before the *Commission;* that the city of
*Milwaukee* had duly passed an ordinance requiring all street
cars in said city to be manned with a crew of not less than
two men, one a motorman and the other a conductor; that
such ordinance provided for a penalty for a failure to com-
ply with the provisions thereof. That the plaintiff herein
appeared before the *Commission* and objected to its juris-
diction and asserted that it had no power to pass the regula-
tion in question. That the *Commission* thereupon proceeded
with its hearing, permitted the introduction of evidence,
and thereupon granted the application of the railway com-
pany, and that an order was entered by the *Commission*
accordingly. The defendants each demurred generally to
the plaintiff's complaint, which demurrers were sustained
by the lower court, and from such ruling plaintiff now ap-
peals to this court.

Counsel for the city contends that under the special char-
ter and the Home Rule Act (ch. 678 of the Laws of 1913
and sec. 1862, Stats., now sec. 193.01) the city possessed
broad and comprehensive powers and had jurisdiction to
pass the ordinance above referred to. We think this position
is quite invulnerable but beside the question, as it fails to
affect or reach the real issue herein presented, which com-
prises, first, the right of the *Railroad Commission* to act in
the premises, and second, the effect which should be given
to the *Commission's* act upon proceedings properly insti-
tuted; in other words, the question whether the order of the
*Commission* suspends or supersedes the ordinance of the
common council of the city. In *Monroe v. Railroad Comm.*
170 Wis. 180, 174 N. W. 450, the court said:

"The *Railroad Commission* being a tribunal of purely
statutory creation, its power and jurisdiction must be found
within the four corners of the statutes creating it."

The statutes involved are secs. 1797—1 to 1797—38. Under sec. 1797—2, Stats., the term "railroad" means and embraces "all street and interurban railway companies." Under sec. 1797—3 every railroad is required to furnish reasonably adequate service and facilities. In order to furnish reasonably adequate service a railroad must possess and maintain proper facilities, which embraces a proper roadbed, tracks, cars, etc., and without proper facilities it would be idle to attempt to establish and maintain proper service; and the same is equally true as to the manning of a car with a crew for operating purposes. Sec. 1797—12 provides for the proceedings under and pursuant to which an application can be made to the *Commission* for the establishment of a proper regulation or standard with respect to service. It also provides for due notice to parties interested, for a hearing and an investigation, and if upon such hearing or investigation it shall be found by the *Commission* that the service complained of is unreasonable or unjustly discriminatory or inadequate, it shall have power to fix and order substituted therefor such service as it finds reasonable and adequate. The proceedings were instituted by the railway company and were duly authorized by sub. (c) of sec. 1797—12, which reads as follows:

"This section shall be construed to permit any railroad to make complaint with like effect as though made by any person, firm, corporation or association, mercantile, agricultural or manufacturing society, body politic or municipal organization."

An examination of secs. 1797—1 to 1797—38, and particularly secs. 1797—12 and 1797—14, is clearly convincing of the power and jurisdiction of the *Railroad Commission* in the premises. The power delegated to the *Railroad Commission* is not legislative, but has been held, upon numerous occasions, purely administrative. If the legislature had attempted to delegate legislative power to the *Commission,* its act would be clearly unconstitutional as an unlawful

delegation of legislative power. Under the provisions of sec. 1797—3, the legislature has established the proper standard with respect to service, and pursuant to such act the service must be reasonable and adequate. The *Commission,* as an administrative body, is clothed with power to exercise its functions in the premises, which consist of an investigation of the facts and a declaration, on its part, of what it considers reasonable and adequate service, and such regulation, when so declared, becomes the act of the legislature. *Minneapolis, St. P. & S. S. M. R. Co. v. Railroad Comm.* 136 Wis. 146, 116 N. W. 905.

"The power to fix rates and tolls to be charged by public utilities is one of the attributes of sovereignty. With us this great power is vested in the legislature, and when the legislature speaks upon the subject its voice is controlling and supreme, unless, indeed, some constitutional guaranty is invaded." *Milwaukee E. R. & L. Co. v. Railroad Comm.* 153 Wis. 592, 605, 606, 142 N. W. 491; *Madison v. Madison G. & E. Co.* 129 Wis. 249, 108 N. W. 65.

What is said in the *Milwaukee E. R. & L. Co. Case, supra,* as to rates and tolls is likewise true with respect to service.

It will thus appear that, within the proper constitutional limitations, the supreme power to create and maintain a proper standard for service vests primarily in the legislature, and the legislature cannot divest itself of this power by delegating it, in part or in whole, to a municipality. It constitutes the original source of power; in other words, is the very fountain-head of the power, and such power continues under all circumstances. The legislature being the creator of the municipal powers, its creature cannot, at any time, possess powers superior to it. Upon this doctrine the solution of the question herein involved must fundamentally rest. It was therefore held in *Vanderwerker v. Superior,* 179 Wis. 638, 192 N. W. 60, that "the legislative control, either directly or through its designated administrative body,

is superior to any conflicting action of the legislative body of the municipality." *Duluth St. R. Co. v. Railroad Comm.* 161 Wis. 245, 253, 255, 152 N. W. 887; *Baraboo v. Dwyer,* 166 Wis. 372, 377, 165 N. W. 297; *Hickman v. Wellauer,* 169 Wis. 18, 24, 171 N. W. 635.  This has also been held by numerous foreign jurisdictions, as will appear from the cases cited in the opinion in the *Vanderwerker Case,* reported on page 644.

This practically disposes of the main contention of the city attorney; however, it is also contended that if no standard is fixed by the law, but the fixing of such standard is left entirely to the discretion of the *Commission,* it is an unlawful delegation of legislative authority.  As has already been said, sec. 1797—3 creates the legislative standard, and the *Commission,* pursuant to its administrative authority and from the facts found, declared the standard with respect to the reasonableness and adequacy of the service, and such declaration becomes the standard of the legislature and there is, therefore, no delegation to the *Commission* by the legislature of legislative authority.  *Minneapolis, St. P. & S. S. M. R. Co. v. Railroad Comm.* 136 Wis. 146, 116 N. W. 905.

It appearing that the *Commission,* upon proper proceedings, made and entered the order above referred to, we cannot judicially say that the service provided for by such order is, in itself, unreasonable or inadequate.

We therefore hold that the order of the circuit court sustaining the demurrers of the defendants must be affirmed.

*By the Court.*—Order affirmed.