Thomson, Trustee (Chicago & North Western Railway Company), Appellant, vs. City of Racine, Respondent.*

*March 8—April 13, 1943.*

* Motion for rehearing denied, without costs, on June 15, 1943.

For the appellant there was a brief by *J. F. Baker* and *John E. Krueger,* both of Milwaukee, and oral argument by *Mr. Krueger.*

*Cornelius Colbert,* city attorney, for the respondent.

A brief on behalf of the Public Service Commission as *amicus curiæ* was filed by the *Attorney General* and *H. T. Ferguson,* assistant attorney general.

FRITZ, J.   In this action for declaratory relief under sec. 269.56, Stats., plaintiff seeks judgment declaring illegal and void an ordinance enacted on October 7, 1941, by the common council of the city of Racine.   It suffices for the purpose of determining the contentions on this appeal from an order sustaining defendant's demurrer to the complaint, on the ground that the facts alleged are insufficient to constitute a cause of action, to note the following facts.   In March, 1941, prior to the enactment of the ordinance, plaintiff, as trustee for the property of the Chicago & North Western Railway Company, filed a petition with the public service commission of Wisconsin for an order authorizing plaintiff to install and maintain automatic short-arm flashing-light signals at crossings of its railroad and certain streets in Racine, in lieu of the flagman protection which the railroad was voluntarily maintaining at such crossings.   The commission took jurisdiction and issued a notice of an investigation and hearing and the assessment of costs; and at the hearing thus noticed the city was represented by its city attorney, who entered a general appearance and participated on its behalf in the proceedings before the commission in said proceedings, after having been authorized so to do by a resolution adopted by the common council of the city.   After such investigation, the commission, on May 19, 1941, made findings of fact and an order authoriz-

ing and directing plaintiff to install said automatic flashing-light signals and to discontinue, upon completing such installation, the flagman protection at the crossings. On October 7, 1941, the city enacted the ordinance in question, which required plaintiff to maintain flagmen at the crossings, and provided that each day's failure to comply therewith shall be punishable by a fine.

On this appeal plaintiff contends the public service commission had jurisdiction and was authorized, under sec. 195.29 (1), Stats., to make the order of May 14, 1941; and that the city is bound by that order and estopped to take any action contrary to the provisions thereof. On the other hand, the defendant contends that the commission did not have jurisdiction, upon a petition of plaintiff, to make that order under sec. 195.29 (1), Stats., but that the city was authorized under sec. 192.29 (3) (b), Stats., to enact the ordinance of October 7, 1941, requiring plaintiff to maintain flagmen at the crossings and was not estopped to enact or to enforce this ordinance; and that there is no conflict between it and the order of the commission, and even if there were a conflict, sec. 192.29 (3), Stats., gives the city specific power to enforce the ordinance.

It is true, as defendant contends, that under the provision in sec. 192.29 (3) (b), which reads,—

"Flagmen or gates shall be placed and maintained, or such mechanical safety appliances shall be installed upon such public traveled grade crossings in villages and cities as the city or village authorities may direct,"—

a city is authorized to enact an ordinance requiring flagmen to be maintained at its public traveled grade railway crossings; that that provision has not been abrogated by the enactment of the provision in sec. 195.28, Stats., which gives to the public service commission the power, on the complaint of the city council, to order either gates or a flagman at a crossing. (*Clark v. Chicago, M., St. P. & P. R. Co.* 214 Wis. 295,

252 N. W. 685) ; and that by virtue of the legislative authorization in sec. 192.29 (3) (b), Stats., an ordinance enacted thereunder is virtually thereupon in effect as a state statute (*McCaffrey v. Minneapolis, St. P. & S. S. M. R. Co.* 222 Wis. 311, 267 N. W. 326, 268 N. W. 872). However, in neither the *Clark* nor the *McCaffrey Case* does there appear to have been any conflicting order made or action taken by the commission in relation to the crossings involved in those cases; and, consequently, there was no question raised or determined therein as to whether, when the commission has taken jurisdiction authorized by some provision in ch. 195, Stats., and in its exercise of such jurisdiction has made an order authorized by such provision in respect to either flagmen or gates or mechanical safety appliances at crossings, the city may thereafter require some other type of protection in contravention of the commission's order. That question is involved and must be determined herein *if* the commission had jurisdiction and was authorized to make its order of May 19, 1941. In respect to this latter matter, as to whether the commission had such jurisdiction and authority, counsel for the parties herein have confined their respective contentions to the questions of whether or not such jurisdiction and authority can be held to have been given to the commission by sec. 195.29 (1), Stats.,—which authorizes proceeding to determine what shall be done in relation to such improvements as new crossings, or the relocation, alteration, opening, or closing thereof, or the removal of obstructions to sight,—or by sec. 195.28, Stats., which authorizes proceeding in relation to ordering what protection shall be provided at grade crossings in the way of gates, flagmen, electric signal, or other suitable safety devices, in proceedings upon the complaint of a common council, board, highway superintendent, or five or more freeholders of a municipality.

On the other hand, no consideration appears to have been given by counsel for either of the parties to the authority and

jurisdiction given the commission by sec. 195.03 (2), Stats., which is discussed in the brief filed on behalf of the commission as *amicus curiæ*, but apparently was not brought to the attention of the trial court. That sec. 195.03 (2) reads:

"*Commission initiative.* The commission may initiate and investigate and order a hearing upon its own motion, in every case which it is authorized to investigate or hear upon complaint or petition under sections 195.08 (9), 195.28, 195.29, 195.30, 195.31 and may exercise therein the same jurisdiction as upon complaints filed."

The jurisdiction and authority given thereby to the commission to "initiate and investigate and order a hearing *upon its own motion, in every case which it is authorized* to *investigate* or *hear* upon complaint or petition *under* sections 195.08 (9), *195.28,* 195.29, 195.30, 195.31 *and* . . . *exercise therein* the *same jurisdiction* as upon complaints filed" clearly includes the jurisdiction and authority given the commission by *sec. 195.28,* Stats., to proceed in the manner provided in sec. 196.26, Stats.,—but on its own motion,—to investigate and order a hearing and exercise therein the same jurisdiction as it could upon a complaint filed under sec. 195.28, Stats.; and if, as is stated in this section, "it shall appear to the satisfaction of the commission that the crossing complained of is dangerous to human life, the commission may order the railway company to erect and operate gates at such crossing, or keep a flagman there, or that such crossing shall be provided with an electric signal or other suitable safety device." Consequently, even if the allegations in the railway's petition to the commission could not be considered to afford a legally sufficient basis for invoking its jurisdiction to proceed under sec. 195.29 (1), Stats., it was not illegal to bring the subject matter of the petition to the commission's attention; and in respect thereto, the commission could then exercise, upon its own motion, if it saw fit, its jurisdiction

and authority, under sec. 195.03 (2), and sec. 195.28 mentioned therein, as fully as it could upon a complaint filed under the latter section by a proper party in relation to the same subject matter. In other words, as the commission could lawfully proceed under sec. 195.03 (2), Stats., upon its motion in respect to the investigation, hearing, and determination of the subject matter presented by the railway's petition, however it may have been brought to the commission's attention, its proceedings, including the order in question, were tantamount to an investigation, hearing, and determination of the subject matter on the commission's own motion, as authorized by sec. 195.03 (2), Stats. Consequently, as the commission under that statute, and sec. 195.28 therein mentioned, had jurisdiction of the subject matter of the proceeding in which the order was made, it is immaterial and unnecessary herein to determine also whether the subject matter of the plaintiff's petition was such as to validly invoke the exercise of jurisdiction of the commission under sec. 195.29 (1), Stats.

As the commission's order authorizes the railway to discontinue the existing flagman protection at the crossings upon completion of the installation of the automatic short-arm flashing-light signals and placing them in service, the city's ordinance requiring plaintiff to thereafter maintain flagmen at the crossings and subjecting the railway to the imposition of a fine for each day's failure to comply with that requirement is obviously in conflict with the commission's order. Under these circumstances, the commission's order is controlling and determinative as to the type of the protection required to be furnished at the crossings in question, in view of the well-established rule that orders issued by the commission within its jurisdiction have the effect of public law. *State ex rel. Reynolds v. Appleton,* 197 Wis. 442, 222 N. W. 244; *Milwaukee v. Railroad Comm.* 182 Wis. 498, 501, 502, 196 N. W. 853. As this court said in the latter case,—

"The commission, as an administrative body, is clothed with power to exercise its functions in the premises, which consist of an investigation of the facts and a declaration, on its part, of what it considers reasonable and adequate service, and such regulation, when so declared, becomes the act of the legislature. *Minneapolis, St. P. & S. S. M. R. Co. v. Railroad Comm.* 136 Wis. 146, 116 N. W. 905. . . . It will thus appear that, within the proper constitutional limitations, the supreme power to create and maintain a proper standard for service vests primarily in the legislature, and the legislature cannot divest itself of this power by delegating it, in part or in whole, to a municipality. It constitutes the original source of power; in other words, is the very fountainhead of the power, and such power continues under all circumstances. The legislature being the creator of the municipal powers, its creature cannot, at any time, possess powers superior to it. Upon this doctrine the solution of the question herein involved must fundamentally rest. It was therefore held in *Vanderwerker v. Superior,* 179 Wis. 638, 192 N. W. 60, that 'the legislative control, either directly or through its designated administrative body, is superior to any conflicting action of the legislative body of the municipality.' *Duluth St. R. Co. v. Railroad Comm.* 161 Wis. 245, 253, 255, 152 N. W. 887; *Baraboo v. Dwyer,* 166 Wis. 372, 377, 165 N. W. 297; *Hickman v. Wellauer,* 169 Wis. 18, 24, 171 N. W. 635."

*By the Court.*—Order reversed.