DEPARTMENT OF NATURAL RESOURCES (Division of Conservation), Appellant, v. CITY OF CLINTONVILLE, Respondent.*

*No. 203.   Argued October 6, 1971.—Decided November 30, 1971.*
(Also reported in 191 N. W. 2d 866.)

* Motion for rehearing denied, without costs, of February 1, 1972.

1

For the appellant there were briefs by *Robert W. Warren*, attorney general, and *William F. Eich*, assistant attorney general; the cause was argued by *Steven M. Schur*, assistant attorney general.

For the respondent there was a brief and oral argument by *Ralph M. Lauer* of Clintonville.

A brief amicus curiae was filed by *Eugene O. Gehl* of Madison, for the Madison Metropolitan Sewerage District.

A brief in reply to brief of amicus curiae was filed for the appellant by *Robert W. Warren*, attorney general, and *Steven M. Schur*, assistant attorney general.

HALLOWS, C. J.   In the city of Clintonville there is a millpond created by the damming of Pigeon River which runs through the city.  On July 10, 1968, the gates of the dam were opened at the direction of alderman Hangartner of the Clintonville common council and the level of the pond was lowered approximately 30 inches.  On July 24, 1968, upon a similar order of Hangartner, the pond was lowered to the level of the riverbed.  These lowerings were without the permission of the DNR as required by sec. 31.02, Stats.,[1] and the

---

[1] "31.02 **Powers of department.** (1) The department, in the interest of public rights in navigable waters or to promote safety and

4

second drawdown was in violation of a 1936 order of the DNR [2] fixing the minimum level of the pond at 86.42 feet.

Under sec. 31.02, Stats., the DNR is given power to set and control the level of navigable rivers and lakes and had exercised this authority in reference to Pigeon River. Although the Pigeon River runs through the city of Clintonville that fact does not lessen the power of the DNR to set and control its level. Although municipalities under sec. 62.11 (5), are given powers over navigable waters, such power is subject to those retained by the state in sec. 31.02. In *Muench v. Public Service Comm.* (1952), 261 Wis. 492, 53 N. W. 2d 514, 55 N. W. 2d 40, we pointed out the state must maintain pre-eminence in the control of navigable waters in this state. The reasonableness of this decision is illustrated in this case. A state conservation warden testified that when water in a pond is rapidly drawn down as it was in this case, turbulence causes silt to fill fishes' gills, killing them. He stated no fish kill results if the water is lowered gradually and that when the DNR permits a drawdown below the minimum level fixed by the department, it supervises the drawdown and requires it to be done over a set period of time. Presumably then, if permission had been obtained by the city of Clintonville, the lowering of the level of the millpond under the supervision of the DNR would not have resulted in any appreciable fish kill. The state argues it was negli-

protect life, health and property may regulate and control the level and flow of water in all navigable waters . . . and may by order fix a level for any body of navigable water below which the same shall not be lowered except as provided in this chapter . . . ."

[2] By ch. 614, sec. 57, Laws of 1965, administration of ch. 31, Stats., was transferred from the public service commission to the department of resource development. The department of resource development was merged into the department of natural resources by ch. 75, sec. 25, Laws of 1967.

gence per se on the part of the city not to get permission to lower the level of the pond; but in the view we take of the construction of sec. 29.65, we do not reach this question. The state strenuously argues the section creates a strict liability more appropriately called "absolute liability," based upon the unauthorized act which caused the death of the fish.

The statute [3] upon which this theory of a cause of action is founded provides the DNR may bring a civil action for the recovery of liquidated damages against any person unlawfully killing fish and in an amount for each fish killed as therein stated. The primary issue in this case is the meaning of the word "unlawfully" as applied to the killing of the fish by the sudden lowering of the level of the pond. The state argues that "unlawfully" means any killing of fish which is not specifically authorized by the provisions of ch. 29, whether or not such killing is with intent or the result of negligence. The city and the amicus curiae argue that "unlawfully" as used in this statute means only such killing as is expressly prohibited in ch. 29 and the civil action is intended to serve the limited purpose of pro-

---

[3] "29.65 Civil actions for damages caused by law violations. (1) The department may bring a civil action in the name of the state for the recovery of damages against any person unlawfully killing, wounding, catching, taking, trapping, or having unlawfully in possession any of the following named protected wild animals, birds, or fish, or any part thereof, and the sum assessed for damages for each wild animal, bird, or fish shall be not less than the amount hereinafter stated in this section: . . .

"(k) Any large or small-mouthed black bass, $5. . .

"(m) Any wall-eyed pike, pike perch, or any other game fish not mentioned in pars. (j) to (1), $2.

"(2) Any damages recovered in such action shall be paid into the state conservation fund and disbursed therefrom by the department. The costs of such action in case of a judgment in favor of the defendant shall be paid out of the conservation fund.

"(3) A civil action brought under this section shall be a bar to a criminal prosecution for the same offense, and vice versa."

viding an alternative to the criminal penalties provided in that chapter. Thus one side argues everything is unlawful which is not permitted, while the other side urges nothing is unlawful unless prohibited.

The word "unlawfully" is not defined in sec. 29.65, Stats., and therefore is subject to interpretation. This word, like many words in the English language, is capable of many meanings but acquires a particular meaning for a particular purpose because of the context in which it is used. The word "unlawfully" need not be a criminal act in a civil action for conspiracy because a wilful violation of a civil right is sufficient for that purpose. *Cranston v. Bluhm* (1967), 33 Wis. 2d 192, 147 N. W. 2d 337. The word "unlawfully" does not always mean knowingly, *Hughes v. United States* (1st Cir. 1964), 338 Fed. 2d 651, 652, and may include what is merely unauthorized by law. Black's Law Dictionary (4th ed. rev. 1968), p. 1705. The word "unlawful" used in sec. 291.10,[4] was held to mean only intentional acts of holdovers. *Feiges v. Racine Dry Goods Co.* (1939), 231 Wis. 270, 285 N. W. 799. An "unlawful order" of the public service commission, sec. 196.41,[5] was held to mean one not promulgated according to legislatively created procedures. *Wisconsin Telephone Co. v. Public Service Comm.* (1939), 232 Wis. 274, 287 N. W. 122, 287 N. W. 593. "Unlawful" in respect to speed in sec. 346.18 (1),[6] the right-of-way statute, has been defined to mean not only violations of statutes or ordinances but necessarily to include negligence. *Pagel v. Kees* (1964), 23 Wis. 2d 462, 127 N. W. 2d 816; *Drake v. Farmers Mut. Automobile Ins. Co.* (1963), 22 Wis. 2d 56, 125 N. W. 2d 391, 128 N. W. 2d 41;

---

[4] Repealed, ch. 284, sec. 7, Laws of 1969.

[5] By ch. 375, sec. 76, Laws of 1943, this section was repealed and review of commission orders was provided under the Administrative Procedure Act, ch. 227, Stats.

[6] Formerly sec. 85.18 (1), Stats. 1939.

*Johnson v. Fireman's Fund Indemnity Co.* (1953), 264 Wis. 358, 59 N. W. 2d 660.

In support of its arguments that the word "unlawfully" imposes liability without regard to intent or negligence, the state cites other sections of the statutes for a precedent such as secs. 192.44, 23.09, and the Workmen's Compensation Law, ch. 102, Stats. We recognize *Frederick v. Great Northern R. Co.* (1932), 207 Wis. 234, 240 N. W. 387, 241 N. W. 363, held sec. 192.44 placed absolute liability on a railroad for starting fires and in *State v. Winkler* (1949), 255 Wis. 352, 38 N. W. 2d 471, this court held that for a violation of a conservation commission's order made pursuant to sec. 23.09 the state need not prove the intent to hunt as an element of the offense of possession of a firearm during closed seasons. But this argument goes no farther than to say that if the legislature so intends it may create absolute liability or strict liability for prescribed acts. The argument is not persuasive that the legislature so intended in enacting sec. 29.65.

Reference is also made to sec. 29.29 (3), Stats., which imposes liability for dumping of substances deleterious to game or fish life as creating liability without regard to intent or care of the actor. This section is not before us on this appeal. There is no allegation of a deleterious substance having been deposited in the pond by the city of Clintonville and this opinion should not in any way be considered as a construction of that section.

The state strenuously argues that unless a broad interpretation is given to the word "unlawfully" so as to create absolute liability, municipalities will be effectively exempted from the working of the statute because municipalities cannot be charged with a criminal act and under sec. 895.43 (3), Stats., are immune from the imposition of liability for the intentional torts of their agents. This is a strong public-policy argument

and if any basis for it can be found in the language, history, and purpose, that argument should be given considerable weight.

It seems generally agreed that ch. 29, Stats., was an attempt by the legislature to create a complete regulatory scheme and as such its separate parts must be read together in order to find meaning of any ambiguity. Ambiguity in language in a statute may be solved by reference to its scope, history, context, subject matter, and the purpose or object to be accomplished. *Scanlon v. Menasha* (1962), 16 Wis. 2d 437, 114 N. W. 2d 791. Since this section is remedial in nature, we must give it as liberal a construction as the facts will permit. But we cannot read into statutory language that which is not there to reach a desirable result.

The language of sec. 29.65 (1), Stats., provides the DNR may bring a civil action for the unlawful killing of game fish and provides for liquidated damages. Sub. (2) provides the damages recovered will be paid into the state conservation fund. Sub. (3) provides the civil action shall be a bar to a criminal prosecution for the same offense and vice versa. The language is in terms of what the DNR may do; it does not directly state substantially the elements of a cause of action. Its language rather than being prohibitive of certain acts refers to "unlawfully killing," etc., implying that somewhere else in ch. 29 will be found a definition of "unlawful."

The section is entitled "Civil actions for damages caused by law violations." This title implies a violation of some law, not merely an act which is not authorized, but it is of no significance although relied upon by the trial court. Captions made by the revisor of statutes, such as this one, are to be given no weight in construing a statute. *Hoeft v. Milwaukee & Suburban Transport Corp.* (1969), 42 Wis. 2d 699, 168 N. W. 2d

134. However, the act which created sec. 29.65 was Bill 135, A (1933), which became ch. 389, Laws of 1933, and was captioned, ". . . to create sec. 29.65 of the statutes, relating to civil actions for damages for violations of the fish and game laws." The caption of an act may be considered in determining the intent of the legislature. *Prechel v. Monroe* (1968), 40 Wis. 2d 231, 161 N. W. 2d 373. This caption is some indication this section was intended as a civil remedy solely for offenses named in ch. 29 entitled "Fish And Game."

An examination of ch. 29, Stats., compels a view that it is a comprehensive scheme for the protection of wildlife with provisions for supervision, licensing, and enforcements, and its provisions must be read together. Many of the numbered sections place restrictions upon the taking or possessing of wildlife. These specific actions are defined and prohibited and penalties for the violations of these sections are provided either in the specific section [7] or in the general penalty provision [8] of the chapter. Several sections [9] of ch. 29 provide for the issuance of licenses authorizing certain conduct and unless the licenses are obtained the conduct is expressly prohibited or declared unlawful and penalties provided. In addition, the DNR is empowered to regulate hunting and fishing on interstate waters, sec. 29.085, and to regulate other matters relating to conservation of fish and game, sec. 29.174. Although for the purpose of regulating the enjoyment, use, disposition and conservation of all wild animals (including fish), the legal title to the custody and protection thereof is vested in the state by sec. 29.02, it does not necessarily follow that an unlimited absolute civil liability is created from this fact. As is often the case when specific acts are

[7] Specific penalties, secs. 29.256, 29.288, Stats.

[8] General penalties, sec. 29.63, Stats.; repeaters, sec. 29.635.

[9] *I.e.*, fishing licenses, secs. 29.135, 29.14, 29.145, and 29.148.

picked out for special treatment within a subject matter, a no man's land is created—neither fish nor fowl— neither expressly lawful nor expressly unlawful. Such seems to be the instant case.

We agree with the view expressed in the brief of the amicus curiae that although all the express violations of the provisions of ch. 29, Stats., are remedied by the imposition of criminal penalties, some cases may not be susceptible to adequate treatment by the criminal penalties when the amount of damage or injury to the fish or wildlife is extensive. Such is the present case where damages were found amounting to $32,548. For such cases especially, sub. (3) of sec. 29.65 provides an alternative adequate civil remedy and if used bars criminal prosecution and conversely, if criminal prosecution is used, it is an alternative for a civil action for the "same offense." The concept of the "same offense" and alternative remedies indicate the civil remedy which was added to the chapter after the criminal penalties were in existence is coextensive with the expressed criminal provisions. This subsection is strong evidence the intent of the legislature was to make the civil remedy of sec. 29.65 not only coextensive with the criminal sanctions but not to create liability for acts or omissions beyond those expressly prohibited.

This view is further supported by the position of sec. 29.65 in ch. 29, Stats. This section is near the end of the chapter and in close proximity to the seven sections which provide the criminal penalties, either for specifically named offenses or for violation of other provisions in ch. 29. The position of a statute may give a clue to its proper construction. *Montreal Mining Co. v. State* (1913), 155 Wis. 245, 144 N. W. 195; *Corstvet v. Bank of Deerfield* (1936), 220 Wis. 209, 263 N. W. 687. In *Montreal,* in deciding whether a statute created a right of appeal from an assessment by the state tax commission, this court examined three sections preceding

the one in question and six following and stated the position of the section in controversy was very persuasive as to its intent. From its position, sec. 29.65 is more logically seen as providing civil redress only for violations of ch. 29 than as an imposition of substantive liability for any killing of fish, unintentionally, negligently, or in a manner not specifically authorized by the statutes. Because of the language of sec. 29.65, its original caption in the act, its position in ch. 29, it was the intent of the legislature that the civil remedy provided for in that section was to redress acts expressly prohibited by ch. 29 and does not encompass all acts not authorized.

As we view sec. 29.65, Stats., it liquidates the amount of damages for acts expressly prohibited by ch. 29 and has no application to any cause of action at common law for an intentional or negligent tort. Since sec. 29.65 provides for a civil action only for criminal acts expressly prohibited in ch. 29, we do not reach the question of the sufficiency of the proof of the scope of authority of alderman Hangartner in lowering the dam. The act of lowering the level of the pond without permission of the DNR was not prohibited by ch. 29, although the DNR's order had the effect of law.[10] *Milwaukee v. Railroad Comm.* (1924), 182 Wis. 498, 196 N. W. 853; *State ex rel. Reynolds v. Appleton* (1928), 197 Wis. 442, 222 N. W. 244; *Thomson v. Racine* (1943), 242 Wis. 591, 9 N. W. 2d 91.

*By the Court.*—Judgment affirmed.

[10] The state claims the acts are unlawful because they would be actionable under secs. 31.23 (2), 23.095, and 31.25, Stats. The first provides penalties for violations of department orders, the second forbids malicious waste of natural resources, and the third declares a dam improperly maintained a public nuisance (*State ex rel. Priegel v. Northern States Power Co.* (1943), 242 Wis. 345, 8 N. W. 2d 350, cited by the state, involved this last section). These assertions arguably detract from the state's contention it would be helpless to prevent municipal assaults on the environment if sec. 29.65 is narrowly construed.