Glenn HOVDE, Plaintiff-Respondent,

v.

VILLAGE OF WAUNAKEE, Defendant-Appellant.†

Court of Appeals

*No. 86–0159. Submitted on briefs March 10, 1987.—Decided June 18, 1987.*

(Also reported in 411 N.W.2d 423.)

† Petition to review denied.

For the defendant-appellant the cause was submitted on the briefs of *Michael P. May* and *Joanne E. Brown* and *Boardman, Suhr, Curry & Field,* of Madison.

For the plaintiff-respondent the cause was submitted on the briefs of *Kenneth B. Axe* and *Isaksen, Lathrop, Esch, Hart & Clark,* of Madison.

Brief of amicus curiae was filed by *Steven M. Schur,* chief counsel, and *Steve Levine,* assistant chief counsel, of Madison, on behalf of *Wisconsin Public Service Commission of Wisconsin.*

Before Gartzke, P.J., Eich and Sundby, JJ.

EICH, J. The Village of Waunakee appeals from a summary judgment awarding Glenn Hovde, a real estate developer, $53,702.72. The sum represents the

remainder of funds deposited by Hovde with the village electric utility in 1978 in connection with the extension of electric service to his subdivision development. The issue is whether the utility may be required to refund customer payments on equitable grounds when the refund is prohibited by its filed electric utility rate schedules and tariffs. We answer the question in the negative and reverse.

In summary judgment cases, we follow the same procedures as the trial court.[1] Here, Hovde's complaint states a claim that the village is improperly withholding the funds, and the village's answer joins the issue by raising its filed rates and tariffs as a defense. The affidavits of both parties set forth undisputed historical facts, leaving only questions of law. Summary judgment, therefore, is an appropriate method of resolving the legal issues.

In order to obtain the village's approval of the plat for the proposed development, Hovde agreed to install streets, sewer and water mains, and a variety of other improvements. In return for the Waunakee electric utility's agreement to extend underground electric service to the subdivision, Hovde agreed to deposit $1,180 per lot with the utility. The agreement, embodied in a village board resolution, provided that these deposits would be returned to Hovde within thirty days after electric meters were installed on the lots.

At all pertinent times, the Village of Waunakee was an electric public utility within the meaning of sec. 196.01(5), Stats. As such, it was subject to the regulatory authority of the Public Service Commission of Wisconsin, including all rate schedules and rules

---

[1]*In re Cherokee Park Plat,* 113 Wis. 2d 112, 115–16, 334 N.W.2d 580, 582 (Ct. App. 1983).

adopted by the commission governing extension of electric service facilities. The Waunakee utility's rates, rules, and schedules, adopted by commission order in January, 1977, provide for customer payments in aid of construction when electric service is extended to a new area. Under the rules, the customer's contribution is based on the utility's estimate of the costs of constructing the necessary facilities. After completion of the extension, the utility refunds any excess over actual construction costs to the customer. If the costs exceed the deposit, additional contributions are required. The rules also provide that: "No refund will be made because of the connection of additional customers after three years from the date service was first established on the extension."

On July 19, 1978, Hovde deposited $110,120.10 with Waunakee to cover ninety-three proposed lots. The extension of service to the subdivision was completed in December, 1978. Over the next three years, as lots were developed, sold, and metered, the utility returned a total of $60,634.70 to Hovde. This figure represented a return of $1,180 for each of twenty-two lots that had been sold and connected to the system as of June 26, 1981, plus a payment of $34,674.70, representing the excess of the amount deposited by Hovde over the utility's actual construction costs for the extension. This left a balance of $49,485.40 on Hovde's original payment. Other lots were metered after December, 1981, and when Hovde requested payment of the balance, the utility refused, claiming that its PSC-approved rate schedules forbade any refunds after the passage of three years from the initial service date.

Hovde sued for the balance, arguing that both his contract with Waunakee and general principles of equity demanded its return. The utility interposed its

rate schedules and the PSC order as a defense and contended that to waive the rule for Hovde would violate sec. 196.22, Stats., which requires utilities to abide by their filed rates and schedules.

Both sides moved for summary judgment. The trial court concluded that the utility, by entering into a contract which failed to specify the three-year refund limitation contained in its service rules and the PSC order, was equitably estopped from relying on that limitation to defeat Hovde's claim. The court entered judgment requiring the utility to pay the balance of the deposit over to Hovde, together with interest and costs.

There is no question that the village is a regulated utility, subject to the provisions of ch. 196, Stats. As such, it is required to file with the commission schedules showing "all rates, tolls and charges ... for any service," including "all rules and regulations that ... in any manner affect the service ...." Sec. 196.19(1) and (2). In addition, sec. 196.20(1) states that "[t]he rate schedules of any public utility shall include all rules applicable to the rendition ... of the service to which the rates specified in the schedules are applicable." Section 196.22 provides as follows:

> No public utility may charge, demand, collect or receive more or less compensation for any service performed by it within the state, or for any service in connection therewith, than is specified in the schedules for service filed under s. 196.19, including schedules of joint rates, as may at the time be in force, or demand, collect or receive any rate, toll or charge not specified in the schedule.[2]

---

[2]This antidiscrimination provision has appeared in essentially the same form since 1929, with only slight variation in wording.

We are satisfied that secs. 196.19(1) and (2) and 196.20(1), Stats., incorporate a utility's service rules into its "schedules for service" to the extent that those rules are subject to the provisions of sec. 196.22. Without directly contesting this proposition, Hovde argues that under sec. 196.58,[3] the village has concurrent jurisdiction with the PSC to regulate service extensions. Section 196.58 authorizes municipalities to: (1) determine by contract, resolution, or ordinance the terms—consistent with chs. 196 and 197—upon which public utilities may be permitted to occupy public places; and (2) to require any public utility to add to or extend its physical plant within the munici-

---

[3]Section 196.58(1), Stats., provides in part:

(1) The governing body of every municipality may:

(a) *Determine by contract,* ordinance or resolution the quality and character of each kind of product or service to be furnished or rendered by any public utility within the municipality *and all other terms and conditions, consistent with this chapter and ch. 197, upon which the public utility may be permitted to occupy the streets, highways or other public places within the municipality.* The contract, ordinance or resolution shall be in force and on its face reasonable.

(b) *Require of any public utility any addition or extension to its physical plant within the municipality* as shall be reasonable and necessary in the interest of the public, and designate the location and nature of the addition or extension, the time within which it must be completed, *and any condition under which it must be constructed,* subject to review by the commission under sub. (4).

(c) *Provide a penalty for noncompliance with the provisions of any ordinance or resolution adopted under this subsection.*

. . . .

(5) The commission shall have original and *concurrent jurisdiction with municipalities* to require extensions of service *and to regulate service of public utilities.* Nothing in this section shall limit the power of the commission to act on its own motion to require extensions of service and to regulate the service of public utilities. [Emphasis added.]

pality. It also states that the PSC "shall have original and concurrent jurisdiction with municipalities to require extensions of service and to regulate service of public utilities."

Hovde argues that these provisions allow a municipality to contract with a developer to provide service extensions without limitation by PSC-approved rules and tariffs. We disagree. First, sec. 196.58, Stats., relates to the authority of a municipality *acting as a municipality* to regulate service extensions by public utilities operating within its boundaries. Here, the extension was not made by the municipality *qua* municipality, but by the village in its capacity as a regulated public utility. The village's municipal powers have nothing to do with this case. The provision and extension of electric service are public utility, not municipal, functions. As a result, we are concerned only with the authority of the Waunakee electric utility. Second, the statute itself recognizes that none of its terms may "limit the power of the commission ... to regulate the service of public utilities." Sec. 196.58(5). It simply has no application to, or effect on, the issues in this case.

It may well be that the lengthy plat approval agreement requiring Hovde to construct a variety of improvements in the subdivision was undertaken pursuant to Waunakee's police power subdivision approval authority under ch. 236, Stats. But PSC orders "have the effect of public law," and they take precedence over municipal acts and ordinances. *Thomson v. Racine,* 242 Wis. 591, 596, 9 N.W.2d 91, 94 (1943).

[T]he supreme power to create and maintain a proper standard for [utility] service vests primarily in the legislature ·.... It constitutes the original source of power .... The legislature being the creator of the municipal powers, its creature cannot, at any time, possess powers superior to it. ... It was therefore held in *Vanderwerker v. Superior,* 179 Wis. 638, 192 N.W. 60, that "the legislative control, either directly or through its designated administrative body [the predecessor to the PSC], is superior to any conflicting action of the legislative body of the municipality." [Citations omitted.] *Milwaukee v. Railroad Comm.,* 182 Wis. 498, 501–02, 196 N.W. 853, 854 (1924).

The Hovde-Waunakee agreement, and the village board resolution accompanying it, characterize Hovde's payment as a "deposit," apparently refundable to him as lots are developed over time. As we have said, however, Waunakee simply cannot extend, or agree to extend, electric service to anyone except in its capacity as a regulated public utility.

Hovde was the utility's customer. As an owner of property requesting the extension of electric service to his land, he could be nothing else. And the Waunakee electric utility cannot deal with its customers in any manner inconsistent with the rules, schedules, and tariffs governing its operations as filed with the PSC. Indeed, under the cases discussed below, neither the Village of Waunakee nor the Waunakee electric utility may, by contract, resolution, or ordinance, waive compliance with those rules, schedules, and tariffs. Allowing the utility to return the funds to Hovde after three years would do just that.

██

We turn to the primary issue: whether, despite our conclusion, principles of equity may nonetheless require the payment to Hovde. As a general rule, a

utility will not be estopped from charging and collecting its filed rates for service even where it has, by price misquote or contract, offered lower rates to a customer. *Wisconsin P. & L. Co. v. Berlin Tanning & Mfg. Co.*, 275 Wis. 554, 559–60, 83 N.W.2d 147, 150–51 (1957); *Kilbourn City v. Southern Wis. Power Co.*, 149 Wis. 168, 180–83, 135 N.W. 499, 504–05 (1912).

In *Berlin Tanning*, the utility, through its own negligence, billed a customer less than the rate on file with the commission and later sued the customer for the difference. The customer raised the defense of estoppel. The court rejected the argument, holding that neither waiver nor estoppel may be invoked as a defense where the result would be to sanction charges lower than those specified in the utility's filed rates. *Id.* at 560–61, 83 N.W.2d at 151.

In *Kilbourn*, a municipality contracted with a utility for free service contrary to the utility's filed rates and charges. The municipality argued that the contract had been executed in part and that the utility, having received the benefits of the contract, should be estopped from asserting its invalidity, even though it was *ultra vires* when made. The supreme court held that the rate schedules and the predecessor to sec. 196.22, Stats., rendered the contract unenforceable and rejected the municipality's estoppel argument, stating: "The rule invoked [estoppel] has no application to a contract made in violation of a statute [prohibiting public utilities from charging more or less than its filed tariffs] and that is therefore in contravention of the lawfully declared public policy of the state." *Id.* at 183, 135 N.W. at 505.

Hovde attempts to distinguish *Berlin Tanning* and *Kilbourn* on the basis that neither case involved unjust enrichment through retention of a customer deposit. We see no basis for distinguishing the cases on

such grounds. They are useful not because the facts are similar or dissimilar to those at hand, but because of their recognition of the general rule of the primacy of filed rate schedules and the unavailability of the defense of estoppel where the schedules are not followed. The rule finds support in several other jurisdictions. *See Haverhill Gas Company v. Findlen,* 258 N.E.2d 294, 296–97 (Mass. 1970); *Chesapeake & Potomac Tel. Co. of Va. v. Bles,* 243 S.E.2d 473, 476–77 (Va. 1978); *Goddard v. Public Service Co. of Colo.,* 599 P.2d 278, 279 (Colo. App. 1979).

We have ruled that the PSC rate schedules are controlling and may not be modified by contract. Hovde's only ground for relief, and thus his only claim against the village, is that equity should render those schedules inapplicable to one in his situation. Because the law does not recognize such a defense, his action must fail. Accordingly, we reverse the judgment and remand to the trial court with directions to grant Waunakee's motion for summary judgment dismissing the action.

Finally, Hovde has moved to strike certain portions of Waunakee's reply brief in which matters *dehors* the record are stated as fact. We grant the motion and award $100 costs to Hovde on the motion. Secs. (Rules) 809.19(1)(d) and 809.83(2), Stats.

*By the Court.*—Judgment reversed and cause remanded with directions. Respondent shall pay costs in the amount of $100 to Hovde.

SUNDBY, J. (*dissenting*). Because Hovde's deposit is not a "customer contribution" it is not subject to the utility rule. The village is free to honor its contract.

To "contribute" is to "*give* something, to a common purpose." *Black's Law Dictionary* 297 (5th ed.

1979) (emphasis added). Hovde gave nothing to the village or the electric utility. His contract with the village contemplates that all of his deposit will be returned upon his performance of his contract. The contract required Hovde to make a deposit with the village to induce the village to install an underground electric distribution system. A "deposit" includes: "Money lodged with a person as an earnest or security for the performance of some contract, to be forfeited if the depositor fails in his undertaking." *Id.* at 395. The common and accepted definition of deposit is "property, usually money, placed in another's hands in trust or safekeeping or to one's credit." *Skelly Oil Co. v. Peterson,* 257 Wis. 300, 305–06, 43 N.W.2d 449, 452 (1950).

Hovde's deposit did not belong to the village or to the electric utility. The relationship between Hovde and the village was not customer-utility but bailor-bailee. A deposit establishes a bailment. *Black's Law Dictionary* at 394.

If the village sincerely wishes to honor its contract with Hovde but it believes it lacks the power to do so because of the utility rule, it may seek legislation permitting it to correct the injustice which will result from our decision. *See State ex rel. Federal Paving Corp. v. Prudisch,* 241 Wis. 59, 4 N.W.2d 144 (1942).