SAFE WAY MOTOR COACH COMPANY, Appellant, vs. CITY OF Two RIVERS, Respondent.

*October 13—November 15, 1949.*

For the appellant there was a brief by *Nash & Nash,* and oral argument by *Walter J. Clark,* all of Manitowoc.

For the respondent there was a brief by *F. W. Dicke* of Two Rivers, and oral argument by *Mr. Dicke* and by *Mr. Philip Porter* of Madison.

Briefs *amici curiae* were also filed by *Shaw, Muskat & Paulsen,* attorneys, and *John G. Quale* and *John F. Zimmermann* of counsel, all of Milwaukee, and by *Stephens, Cannon, Bieberstein & Cooper* and *John L. Bruemmer,* all of Madison.

ROSENBERRY, C. J.   From the allegations of the complaint it appears:

"That on the 21st day of March, 1932, the Public Service Commission of Wisconsin [hereinafter referred to as the

"commission"] issued an order authorizing Wisconsin Public Service Corporation to abandon the auto transportation system it had operated in the cities of Manitowoc and Two Rivers and intermediate points, and by the same order authorized Safe Way Motor Coach Company to operate an auto transportation system in the cities of Manitowoc and Two Rivers and intermediate points.

"That in conformity with said order a certificate of authority was issued to Safe Way Motor Coach Company by Public Service Commission of Wisconsin, authorizing it to operate motor vehicles as an auto transportation company for the carriage of freight and passengers over the route described in Exhibit "B" attached to said certificate; . . ."

That a part of the route described in Exhibit "B" attached to the complaint is as follows: East to Roosevelt avenue at the city limits of Two Rivers, thence along Roosevelt avenue to Twelfth street, east on Twelfth street to Washington street, north on Washington to Twenty-Seventh street, returning over the same route to Manitowoc.

That since 1932 the plaintiff has carried urban passengers over said route within the city of Two Rivers and return, that being the route upon which the plaintiff was and is authorized to travel by the commission.

On Tuesday, August 17, 1948, the defendant city of Two Rivers, by its common council, adopted an ordinance, section 1 of which is as follows:

"Section 1. From and after the 22d day of August, 1948, the Safe Way Motor Coach Company, shall be permitted to operate buses only upon the following streets in the city of Two Rivers, namely:

Lake Shore drive from the south city limits to Washington street; and

Washington street from its intersection with Lake Shore drive to Twenty-Seventh street, and not upon any other streets except to the extent that detours are necessary by reason of suspension of highway traffic on the above-named streets."

On September 7, 1948, the city of Two Rivers adopted an ordinance amending the ordinance of August 17, 1948, in a particular not material on this hearing.[1]

It is further alleged in the complaint:

"That Twelfth street and Roosevelt avenue run through heavily populated residential and business districts in the city of Two Rivers from which the plaintiff draws its passengers. That Lake Shore drive from the south city limits to Washington street, designated in the ordinance above referred to, is located along the shore of Lake Michigan, and bounded on the east by the Lake Michigan beach, and on the west by a city park which is inclosed with a high wire fence, and by other property which does not have residences located thereon or business houses from which the plaintiff could receive passengers. There are no residences whatever on either side of said Lake Shore drive."

It also appears that in 1944 Two Rivers Transit, Inc., made application to the commission for authority to operate as a common carrier of passengers within the city of Two Rivers. That such application was granted authorizing Two Rivers Transit, Inc., to operate as a common carrier of passengers on various streets in the city of Two Rivers. That since the issuance of said certificate Two Rivers Transit, Inc., has been transporting passengers commencing at Twenty-Seventh and Washington streets, thence south on Washington street to its intersection with Twelfth street, thence west on Twelfth street to its intersection with Roosevelt avenue, thence southwest on Roosevelt avenue to a point near the south city limits of the city of Two Rivers.

It is further alleged that the ordinance adopted August 17, 1948, was enacted for the purpose of granting to Two Rivers Transit, Inc., the exclusive right to transport passengers as a common carrier from the intersection of Twelfth street and Washington street, thence west on Twelfth street to its in-

---

[1] The situation is illustrated by a map of a part of the city of Two Rivers reproduced herewith.

# MAP
## OF THE
# CITY OF TWO RIVERS
### WISCONSIN
ENGINEERING DEPARTMENT
JANUARY, 1948
SCALE - 1" = 500'

tersection with Roosevelt avenue, and thence southwesterly on Roosevelt avenue to its intersection with the south city limits of the city of Two Rivers and return, and to prohibit the plaintiff herein from carrying passengers as a common carrier on said streets.

The trial court was of the view that sec. 194.33, Stats., authorized the city to enact the ordinance complained of, and sustained the demurrer. It is the contention of the plaintiff that under the decision of this court in *Vanderwerker v. Superior* (1923), 179 Wis. 638, 192 N. W. 60, its right under the license granted to it by the commission is superior to the right granted by the city with respect to the routing of common motor carriers and that the authority granted to the city is subject to the provisions authorizing the commission to prescribe routes, etc.

That there is a clear conflict between the license granted to the plaintiff by the commission and the terms of the ordinance complained of there can be no doubt. The question involved is upon which route shall the plaintiff operate, that designated by the commission or that prescribed by the city? A solution of this question presents a difficult problem in statutory construction. We shall be aided somewhat by the history of the statutory provisions involved.

The regulation of the operation of motor vehicles for hire commenced with the enactment of ch. 546, Laws of 1915, popularly known as the Jitney Law. That act provided that the Railroad Commission, now the Public Service Commission, should upon application license every person, firm, or corporation operating any motor vehicle along and upon any public street or highway for the carriage of passengers for hire and affording a means of local, street, or highway transportation similar to that afforded by street railways. The act became secs. 1797—62 to 1797—68, Stats. 1915. The law was amended in minor particulars from time to time.

The case of *Vanderwerker v. Superior, supra,* arose under the statutes of 1921. Sec. 1797—68 was then in force. It provided:

"Every city, village or town within or through which any motor vehicle described in sec. 1797—62 shall be operated may require that local consent for the operation thereof be procured and as a condition of such consent may require reasonable compensation for the repair and maintenance of pavements and bridges, and compensation for the regulation of street traffic, and for any other expense occasioned by the operation of such motor vehicle."

The section was amended from time to time and in 1933 the existing law relating to the regulation of common motor carriers of property and passengers was repealed and new sections 194.01 to 194.46, Stats., were created by ch. 488, Laws of that year.

The section relating to municipal consent, 194.33, Stats., provides:

"No common motor carrier of property or of passengers shall operate any motor vehicle within or through any city or village except in compliance with action taken by such municipality in relation to such streets and routes. No action by any city or village under this section shall be subject to review by the commission. Provided that no carrier operating under this chapter shall be denied the right to operate in any such municipality over any federal or state trunk highway upon payment of such license tax not exceeding the maximum specified in subsection (17) of section 76.54 as the municipality may prescribe."

In our search for an answer to the problem involved in this case we shall have in mind two fundamental rules of statutory interpretation. First, intent of the legislature is a controlling factor, and second, that ch. 194, Stats., of which sec. 194.33 is a part, is to be so construed that every part of it will be given effect.

In this case it is not necessary to make any extended search to discover the legislative intent. It is set forth in sec. 194.02, Stats., as follows:

"It is hereby declared to be the purpose and policy of the legislature in enacting chapter 194 to confer upon the motor vehicle department and the public service commission the power, authority and duty to supervise and regulate the transportation of persons and property by motor vehicles upon or over the public highways of this state in all matters, whether specifically mentioned herein or not, so as to protect the safety and welfare of the traveling and shipping public in their use of the highways; to relieve the existing and all future undue burdens on the highways arising by reason of the use of the highways by motor vehicles; to carefully preserve, foster and regulate transportation to the end of developing and preserving each separate type of the transportation system by highway and rail adequate to meet public needs."

Sec. 194.18, Stats., provides:

"The commission is vested with power and authority and it shall be its duty: (2) To designate from time to time the public highways as routes over which said common motor carriers may or may not operate, and to designate the time that such vehicles shall or shall not be operated thereon, so as to prevent congestion which shall affect the safety of persons or property upon such public highways. Said commission may also determine whether the granting of additional certificates to common carriers on any highway will cause any congestion, so as to affect the safety of persons and property upon such public highway by the additional use thereof by such persons seeking such additional common-carrier certificates, and such a finding by the commission shall be grounds for the denial of such certificates or permits, with respect to such highway or any portion thereof."

The case of *Vanderwerker v. Superior, supra,* dealt with a similar conflict between state and municipal authority.

The court said (p. 642):

"The designation by the railroad commission of the streets and public highways over which it deems that such

service is reasonably required for the accommodation of the public is beyond question a substantial element in its consent and permission and in the rights and liabilities thereby established.

"By the adoption of the so-called Jitney Law . . . , the legislature, through its administrative body, the railroad commission, assumed jurisdiction over the subject matter of such service as that which is concededly being afforded by the plaintiffs, that is, street transportation by motor vehicles similar to that afforded by street railways. . . . All the questions as to what shall be the general routes and the territory, the character of the service, and the hours of operation, all regardless of any other service being then furnished, are by such law vested in the determination of the railroad commission, subject to judicial review in the same manner as are its other orders, and such determinations are therefore beyond municipal interference or restriction.

"The situation presented is one where if the plaintiffs, relying upon the certificate of the railroad commission, should undertake to operate in accordance with the same upon the streets therein designated, there would be an immediate conflict with the conditions of the ordinance. On the other hand, they could not operate at all in that capacity on the streets in Superior without the certificate of the railroad commission, ordinance or no ordinance, and yet if they be required to comply with the conditions of the ordinance there is a substantial destruction as to plaintiffs of rights permitted to them by the state. To uphold the ordinance is to substantially nullify the certificate of the railroad commission. This cannot and ought not be done. The legislative control, either directly or through its designated administrative body, is superior to any conflicting action of the legislative body of the municipality." (Citing cases.)

In the case at bar we are asked to hold, contrary to the *Vanderwerker case,* that under the provisions of sec. 194.33, Stats., the city of Two Rivers has the power to nullify or in effect to repeal the designation of route within the city made by the Public Service Commission and substitute a designation of its own. It should be observed that the commission

is an agency of the state, possessing such powers only as the legislature has seen fit to grant it. The city is a municipal corporation and likewise an agency of the state and possessed of such powers as has been conferred upon it by the constitution or legislative enactment. The defendant city derives all of its powers for the regulation of motor carriers from legislative enactments. Primarily the power of regulation of motor carriers is in the state. It may delegate such powers to its various agencies to such extent as may seem to it to be likely to best serve the public interest. The power delegated to the commission is a power to act throughout the state. The commission is an arm of the legislature and is authorized to exercise the power of the legislature as the legislature itself might do within the field of its limitations. A city, however, does not act throughout the state. Its jurisdiction and authority is limited to the territory within its boundaries. Within that territory it may exercise such powers as the legislature has conferred upon it. While the city and the commission are both agencies of the state they function at different levels.

By sec. 194.18, Stats., the commission is vested with power and authority and the duty "(2) To designate from time to time the public highways as routes over which said common motor carriers may or may not operate. . . ."

Sec. 194.23 (1), Stats., provides:

"No person shall operate any motor vehicle as a common motor carrier except in accordance with the terms and conditions of a certificate issued to and held by him and except by virtue of a permit issued to him for the operation of such vehicle. . . ."

The language of these sections is mandatory. No exception thereto is to be found in the statute. The power having been conferred upon a state agency acting for the state throughout its boundaries to designate routes for common motor carriers we are of the opinion that sec. 194.33, Stats.,

which provides that no common motor carrier of property or passengers shall operate any motor vehicle within or through any city or village except in compliance with action taken by such municipality in relation to such streets and routes, is a power granted to the city subordinate to the authority of the commission. No municipality is vested with the power to authorize common motor carriers to operate within its limits in the first instance, but when common motor carriers are authorized by the commission to operate within the limits of a village or city, the village or city may make such reasonable regulations as are necessary in the public interest. To say that sec. 194.33 confers upon the villages and cities of this state the power to nullify an order of the commission results in an irreconcilable conflict. Sec. 194.18 vests the commission with the power to designate from time to time the public highways as routes over which said common motor carriers may or may not operate. By sec. 194.01 (2) public highway is defined to mean every street, alley, road, highway, or thoroughfare of any kind except waterways in this state, while open to public travel and use. The power to designate the routes over which common motor carriers shall operate is thus vested exclusively in the commission. There is in ch. 194 no exception which permits cities to exercise the same power. The provision of sec. 194.33 that no common motor carrier of property or of passengers shall operate any motor vehicle within or through any city or village except in compliance with action taken by such municipality in relation to such streets and routes refers to the power of cities over routes over which the common motor carrier is authorized by the commission to operate its vehicles.

From the provision in sec. 194.33, Stats., "that no carrier operating under this chapter shall be denied the right to operate in any such municipality over any federal or state trunk highway" it might be argued that by implication it is as-

sumed the city would have the power to deny the right of any common motor carrier to operate on any street other than a federal or state trunk highway. Such a construction would nullify the provisions of sec. 194.18 already set out.

The words "except in compliance with action taken by such municipality in relation to such streets and routes" confer no power to designate routes but relate to such action as the municipality may take with respect to a route already designated by the commission. The construction contended for by the defendant would defeat the intent of the legislature as declared in sec. 194.02, Stats., heretofore referred to.

By sec. 194.18, Stats., the commission is vested with power and authority not only to designate routes over public highways but powers conferred upon it to fix, alter, and regulate rates, facilities, accounts, etc., to regulate operating and time schedules and to regulate the routes of common motor carriers so as to meet the needs of the community, assure adequate transportation service to the territory traversed, and to prevent unnecessary duplication of service between such common motor carriers, to require the co-ordination of service and schedules of common motor carriers, and to supervise and regulate common motor carriers in all matters affecting their relationship with the public and with other common motor carriers and with each other.

If sec. 194.33, Stats., be construed as the defendant contends, it would be impossible for the commission to discharge the duties imposed upon it by sec. 194.18. Ordinance "C" was adopted August 17, 1948. This ordinance, if valid, would require the plaintiff to operate upon a route entirely different than that prescribed by the commission. This the plaintiff is explicitly forbidden to do by sec. 194.23. That section requires that no person shall operate any motor vehicle as a common motor carrier except in accordance with the terms and conditions of a certificate issued to and held by him, and except by virtue of a permit issued to him for

the operation of such vehicle. It is only by operating in compliance with the terms of its certificate that the plaintiff can continue to operate at all. If every village and city can exercise the power to alter routes of common motor carriers within its boundaries the powers conferred upon the commission to regulate common motor carriers cannot be properly exercised.

The attempt of the common council of the defendant city to change the route over which the plaintiff shall operate is a usurpation of power conferred solely upon the commission. Such ordinance is therefore void.

We reach this conclusion the more readily for the reason that in *Vanderwerker v. Superior, supra,* the court had under consideration the question whether the power granted to the commission to designate routes was superior to that of the city under sec. 1797—68, Stats., already set out, and it was held that the power of the Railroad Commission (now Public Service Commission) was superior to that of the defendant city. The question there decided is identical with the question raised in this case. Although twenty-six years have elapsed and the legislature has been in session fourteen times, the conflict has not been removed. By well-established law the decision has become a part of the statute. *Thomas v. Industrial Comm.* (1943), 243 Wis. 231, 10 N. W. (2d) 206. While the statute has been revised and amended, the conflict that was dealt with in *Vanderwerker v. Superior, supra,* has remained.

*By the Court.*—The order appealed from is reversed and the cause is remanded for further proceedings according to law.